[Cite as *Town & Country Co-op, Inc. v. Sabol Farms, Inc.*, 2012-Ohio-4874.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

TOWN & COUNTRY CO-OP, INC.

    Appellee

    v.

SABOL FARMS, INC., et al.

    Appellants

C.A. No.     11CA0014

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    09-CV-0044

DECISION AND JOURNAL ENTRY

Dated: October 22, 2012

---

CARR, Judge.

{¶1} Appellants, Sabol Farms, Inc. and Kenneth Sabol Jr., appeal the judgment of the Wayne County Court of Common Pleas that granted summary judgment in favor of appellee, Town & Country Co-op, Inc. This Court reverses and remands.

I.

{¶2} In 2002, Sabol Farms, through Mr. Sabol, executed a business credit agreement with Town & Country, whereby Sabol Farms, as the customer, agreed to pay for goods and services purchased from Town & Country. The business credit agreement included a provision that Mr. Sabol, irrespective of the capacity in which he signed the agreement, would be personally liable for all debts incurred, created or acquired by Sabol Farms. The parties maintained a business relationship for several years without incident. In 2007, the parties executed a commodity purchase contract (the "grain contract") whereby Sabol Farms agreed to

deliver 10,000 bushels of wheat to Town & Country for $4.37 per bushel between July 1, 2008, and August 31, 2008.

{¶3} In January 2009, Town & Country filed a complaint against Sabol Farms, Kenneth Sabol, and William Sabol,[1] alleging numerous claims that all arose out of Sabol Farms' alleged failure to deliver the wheat under the terms of the grain contract. In count one, Town & Country alleged that Sabol Farms and Mr. Sabol "without justification, unilaterally cancelled their grain contract with [Town & Country] by failing to deliver the contracted grain within the time specified in the contract." The Uniform Commercial Code, applicable to contracts for the sale of goods, defines "cancellation" as one party's termination of the contract "for breach by the other[.]" R.C. 1302.01(A)(14). Moreover, the code identifies cancellation as a remedy available to sellers, like Sabol Farms, for breach by the buyer, here Town & Country. R.C. 1302.77(F). Despite Town & Country's inartfully articulated claim, however, it clearly intended to allege that Sabol Farms and Mr. Sabol breached the grain contract. It did so, however, by alleging that it issued a "cancellation notice" to Sabol Farms and Mr. Sabol "in the amount of $15,500.00" and that Sabol failed to pay, thereby breaching the grain contract.

{¶4} Count three alleged that Sabol Farms breached the business credit agreement by failing to pay for "certain products" furnished by Town & Country. Those products were not identified in the complaint. In counts two and four, Town & Country alleged a claim for money due on account. The sum requested corresponded to the amount due for "cancellation" of the grain contract and/or breach of the business credit agreement, plus interest, service charges, costs, and expenses. Town & Country alleged in count five that Sabol Farms and

---

[1] William Sabol died shortly after the complaint was filed. Sabol Farms filed a suggestion of death. The trial court ultimately substituted Kenneth Sabol, executor of William Sabol's estate, for William Sabol.

Messrs. Sabol were unjustly enriched as a result of products received by them from Town & County and for which they failed to pay. Again, the complaint did not identify the products. Finally, in count six, Town & Country alleged that Mr. Sabol personally guaranteed payment of all amounts owed to Town & Country under the business credit agreement and that he was in default of such payment.

{¶5} In their answer, Sabol Farms and Mr. Sabol admitted that they entered into the grain contract with Town & Country and further admitted that "interest is due," although they denied owing the amount of $15,500.00 as for cancellation fees. Moreover, although they denied the allegation that they entered into the business credit agreement with Town & Country, Sabol Farms and Mr. Sabol admitted that they agreed to pay according to the terms of their account with Town & Country in consideration of the credit extended and goods furnished by Town & Country. Sabol Farms and Mr. Sabol denied all other allegations in the complaint.

{¶6} Sabol Farms and Mr. Sabol moved the trial court to stay the proceedings and compel arbitration based on an arbitration provision in the grain contract. The trial court denied the motion and Sabol appealed. This Court affirmed the trial court's judgment. *Town & Country Co-op, Inc. v. Sabol Farms*, 9th Dist. No. 09CA0072, 2010-Ohio-5300.

{¶7} After resolution of Sabol's appeal, Town & Country filed a motion for summary judgment on all its claims except the claim of unjust enrichment, asserting that that claim would be moot if the court granted summary judgment in its favor on its other claims. Sabol Farms and Mr. Sabol filed a brief in opposition, and Town & Country replied. The trial court found that Mr. Sabol assumed personal liability for debts owed to Town & Country under the terms of the business credit agreement; that Mr. Sabol's personal liability pursuant to the business credit agreement made him personally liable for payment of the invoice sent based on Sabol's failure

to perform under the grain contract; and that it was not improper for the court to rule on the motion for summary judgment even though Town & Country had not responded to Sabol's discovery requests because Sabol failed to move to compel discovery, properly request a continuance, or demonstrate that further discovery would aid this case. The trial court entered judgment in favor of Town & Country in the amount of $15,500.00, plus interest at the contractual rate of 24% per annum, the rate referenced solely in the business credit agreement. Sabol Farms and Mr. Sabol appealed, raising four assignments of error for review.

II.

### ASSIGNMENT OF ERROR I

THE COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WHEN A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER THE BUSINESS CREDIT AGREEMENT APPLIED TO THE COMMODITY PURCHASE CONTRACT.

{¶8} Sabol Farms and Mr. Sabol argue that the trial court erred by granting summary judgment in favor of Town & Country pursuant to the terms of the business credit agreement in relation to Sabol's actions arising out of the grain contract. This Court agrees.

{¶9} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶10} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing

such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶11} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶12} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

{¶13} Significantly, Town & Country did not allege that Sabol breached the grain contract by failing to deliver the wheat as required. Rather, Town & Country considered Sabol's failure to deliver the wheat by 2:00 p.m. on August 29, 2008, a cancellation entitling it to payment of the difference between what it would have paid for the wheat and that day's market price for wheat, plus a ten cents per bushel cancellation fee. It then sent an invoice to

Sabol for $15,500.00. It was Sabol's failure to pay the invoiced amount which gave rise to Town & Country's claims for breach of the grain contract and breach of the business credit agreement. The trial court entered judgment against both Sabol Farms and Mr. Sabol, jointly and severally, under terms relevant to the business credit agreement.

{¶14} Sabol argues that the trial court erred by entering judgment against it because the business credit agreement is separate and distinct from the grain contract and the two are mutually exclusive. Significantly, Sabol Farms and Mr. Sabol do not contest that they did not pay the invoice issued by Town & Country. Rather, they argue that the business credit agreement was not the proper mechanism by which Town & Country could recover damages for breach of the grain contract.

{¶15} "The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal." *Watkins v. Williams*, 9th Dist. No. 22162, 2004-Ohio-7171, ¶ 23, citing *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998). Only if the terms of a contract may reasonably be understood in more than one sense can they be construed as ambiguous. *Preferred Tax & Fin. Servs., Inc. v. Mark W. Boslett, Inc., CPA*, 9th Dist. No. 22801, 2006-Ohio-2690, ¶ 14. Where a contract, by its terms, is clear and unambiguous, its interpretation is a matter of law, and there remain no issues of fact for determination. *Denman v. State Farm Ins. Co.*, 9th Dist. No. 05CA008744, 2006-Ohio-1308, ¶ 13. "Where an ambiguity exists, however, interpretation of a contract involves both factual and legal questions. Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper." (Internal citations omitted.) *Watkins* at ¶ 23.

{¶16} Town & Country argued in its motion for summary judgment that Sabol Farms and Mr. Sabol were obligated to pay the $15,500.00 invoice based on the terms in the parties' business credit agreement. They rely on a provision in that agreement which stated: "I/We agree to pay the full purchase price for all goods, materials, equipment and/or services purchased from Town & Country within thirty (30) days of the billing date shown on each invoice or monthly account statement." Town & Country argued that Mr. Sabol was personally liable to pay the invoice based on the following provision in the business credit agreement: "* * * I/We, regardless of the capacity in which my/our signature(s) may appear below, do absolutely, irrevocably, unconditionally and personally guarantee the prompt and punctual full payment when due, by acceleration or otherwise, of each and every debt obligation now existing or hereafter incurred, created or acquired by the foregoing Customer to Town & Country, including all finance charges, penalties, costs and attorney[']s fees." A later provision established a 24% annual service charge for late payments. The business credit agreement further contained the following purpose clause: "This Credit Agreement is made and effective as of _____, 20___, by and among the following Customer(s) [Sabol Farms] and Town & Country Co-op, Inc. ("Town & Country") for the purpose of obtaining credit from Town & Country."

{¶17} Sabol failed to pay the invoice issued by Town & Country after Town & Country claimed Sabol cancelled the grain contract by failing to deliver wheat as agreed. Town & Country failed to present any evidence that its mere issuance of an invoice to Sabol for cancellation of the grain contract provided any "goods, materials, equipment and/or services purchased from Town & Country." Town & Country appended the affidavit of Mike Mooney, its credit manager, who averred that the business issued an invoice to Sabol for cancellation fees

associated with the grain contract but he did not explain how that invoice constituted anything purchased by Sabol from Town & Country.

{¶18} Moreover, Town & Country failed to present evidence that the $15,500.00 invoice constituted a valid "debt" which obligated both Sabol Farms and Mr. Sabol. Mr. Mooney averred that Town & Country would have received a profit of $1.45 per bushel, based on the difference between the market price and contract price for the wheat. Based on its anticipated purchase of 10,000 bushels for resale, Town & Country would have realized a profit of $14,500.00, assuming it had a buyer for the wheat. Town & Country failed to present any evidence that it had a buyer for the 10,000 bushels at any price. In addition, Mr. Mooney did not aver in his affidavit that there was a ten cent per bushel cancellation fee which would have accounted for the remaining $1000.00 reflected in the invoice. Moreover, there are no provisions in the grain contract which address cancellation, cancellation fees, or liquidated damages, so it is unclear how Town & Country justified the additional cancellation fee. Because there is no evidence in the record to support its assertion that Sabol owed the sum of $15,500.00 as a result of any cancellation of the grain contract, Town & Country did not meet its initial burden under *Dresher* in that regard.

{¶19} Finally, a review of the business credit agreement indicates that this is not a contract the terms of which may be reasonably understood in only one sense. The clearly enunciated purpose of the agreement was to allow Sabol Farms to obtain credit from Town & Country, specifically to purchase goods, materials, equipment and/or services from Town & Country. On the other hand, the agreement stated that the customer, in both a business and personal capacity, would be liable for "each and every debt obligation now existing or hereafter incurred, created or acquired" by Sabol. Because some debt obligations, including "all finance

charges, penalties, costs and attorney[']s fees" would reasonably be outside the realm of "purchase[s] from Town & Country[,]" and not subject to the extension of credit, the business credit agreement is ambiguous on its face. Therefore, a genuine issue of material fact existed regarding whether the business credit agreement was applicable to impose a debt and liability on both Sabol Farms and Mr. Sabol for the alleged breach of the grain contract. Under these circumstances, Town & Country failed to meet its initial burden of showing that no genuine issues of material fact existed and that it was entitled to judgment as a matter of law. Accordingly, the trial court erred by granting summary judgment in favor of Town & Country. The first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WHEN A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER KENNETH SABOL JR. SUBJECTED HIMSELF TO PERSONAL LIABILITY BY SIGNING THE CREDIT AGREEMENT IN HIS OFFICIAL CAPACITY AS SECRETARY/TREASURER FOR SABOL FARMS INC.

## ASSIGNMENT OF ERROR III

THE COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WHEN A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER KENNETH SABOL JR. SUBJECTED HIMSELF TO PERSONAL LIABILITY BY SIGNING THE COMMODITY PURCHASE CONTRACT IN HIS OFFICIAL CAPACITY AS SECRETARY/TREASURER FOR SABOL FARMS INC.

## ASSIGNMENT OF ERROR IV

THE COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WHEN DISCOVERY HAD NOT BEEN COMPLETED.

{¶20} Based on this Court's resolution of the first assignment of error, we decline to address the remaining assignments of error as they have been rendered moot. *See* App.R. 12(A)(1)(c).

III.

{¶21} Sabol Farms' and Mr. Sabol's first assignment of error is sustained. We decline to address the remaining assignments of error. The judgment of the Wayne County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

MOORE, J.
DISSENTING.

{¶22} Because I can discern no ambiguity in the business credit agreement, and because the parties do not dispute that Sabol Farms' breached the grain contract, thereby creating a debt owing from Sabol Farms to Town & Country, I respectfully dissent. In the business credit agreement, Mr. Sabol personally guaranteed payment of "each and every" debt then "existing or [t]hereafter incurred," by Sabol Farms to Town & Country. Therefore, the parties created an unambiguous personal guarantee, unlimited by the nature of the transaction, the time the debt was incurred, or the amount of the debt. *See Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 16 ("Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation," and "a court cannot create ambiguity in a contract where there is none."). Accordingly, I would affirm the decision of the trial court granting summary judgment to Town & Country.

APPEARANCES:

GINO PULITO, Attorney at Law, for Appellants.

DAVID J. WIGHAM, Attorney at Law, for Appellee.