[Cite as *Skidmore v. Natl. Bronze & Metal of Ohio*, 2014-Ohio-4423.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

ROBERT DOUGLAS SKIDMORE

    Appellant

    v.

NATIONAL BRONZE & METALS
(OHIO) INC., et al.

    Appellees

C.A. No.    12CA010328


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CV169488

DECISION AND JOURNAL ENTRY

Dated: October 6, 2014

---

BELFANCE, Presiding Judge.

{¶1}    Plaintiff-Appellant Robert Skidmore appeals the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees National Bronze & Metals (Ohio), Inc. ("NBMO"), Michael Greathead, and Joao Saraiva.  For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2}    Mr. Skidmore began working at NBMO in early 2006 as the maintenance foreman and remained in that position until August 18, 2010.  During his time at NBMO, Mr. Skidmore consistently received raises, bonuses, and excellent performance reviews.  On at least one occasion, he was singled out for praise by Mr. Saraiva for his work.

{¶3}    On August 16, 2010, a man entered Mr. Skidmore's office and asked for assistance getting a shipment loaded onto his truck.  Mr. Skidmore walked out with the man but was unable to locate anyone who could assist him.  The man pointed at a pallet full of scrap

metal and indicated that he was there to pick that metal up. Mr. Skidmore offered to load the metal on to the man's truck but asked to see the man's papers indicating that he was supposed to take the scrap metal. The man indicated that he had the papers in his truck and went to get them; Mr. Skidmore proceeded to load the materials onto the back of the pickup. After Mr. Skidmore was done, the man emerged from his truck talking on his cellphone. He did not have any papers for Mr. Skidmore. Mr. Skidmore became upset and asked the man if he was working with the metals room manager. The man indicated that he was, and Mr. Skidmore returned to his office to call the metals room manager, who was in a meeting with Mr. Saraiva. While Mr. Skidmore made the call, the man in the truck drove away with the scrap metal, which was never recovered. On August 18, 2010, two days after the theft, Mr. Saraiva called Mr. Skidmore into his office and terminated his employment.

{¶4} Mr. Skidmore filed a complaint against NBMO, Mr. Saraiva, and Mr. Greathead, alleging age discrimination, disparate treatment, violations of the Ohio Minimum Fair Wage Standards Act, worker's compensation retaliation, negligent retention, and breach of contract. Following discovery, the defendants moved for summary judgment on all of Mr. Skidmore's claims. Mr. Skidmore filed a motion in opposition, and the defendants filed a response to Mr. Skidmore's motion. The trial court granted the defendants' motion for summary judgment.

{¶5} Mr. Skidmore has appealed, raising five assignments of error for our review. For ease of discussion, we have rearranged his assignments of error.

II.

{¶6} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving

any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.

{¶7} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 293, quoting Civ.R. 56(E).

## ASSIGNMENT OF ERROR II

THE TRIAL COURT IMPROPERLY GRANTED SUMMARY [] JUDGMENT ON MR. SKIDMORE'S VIOLATION OF OHIO MINIMUM WAGE FAIR STANDARDS ACT.

{¶8} In Mr. Skidmore's second assignment of error, he argues that the trial court incorrectly concluded that he was an exempt employee under R.C. Chapter 4111, the Ohio Minimum Fair Wage Standards Act, and, therefore, not entitled to overtime under R.C. 4111.03(A). We agree.

{¶9} R.C. 4111.03(A) provides that

> [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.

The parties in this case focused on whether Mr. Skidmore was an "employee employed in a bona fide executive, administrative, or professional capacity * * *.'" 29 U.S.C. 213(A)(1). Specifically, the parties dispute whether Mr. Skidmore was an "employee employed in a bona fide executive * * * capacity." 29 U.S.C. 213(A)(1).

{¶10}  According to the Code of Federal regulations, an "employee employed in a bona fide executive capacity" means any employee

> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. 541.100(a).  The parties agree that there is no dispute that Mr. Skidmore satisfied 29 C.F.R. 541.100(a)(1) as he was compensated on a salary basis in excess of $455 per week. However, the parties disagree about the remaining factors.

{¶11}  We initially note that the trial court does not appear to have considered whether there was a dispute of fact regarding 29 C.F.R. 541.100(a)(4), instead focusing solely on whether Mr. Skidmore supervised two or more employees, 29 C.F.R. 541.100(a)(3), and on whether his position was managerial.  29 C.F.R. 541.100(a)(2).  *See also* 29 C.F.R. 541.102 (listing activities considered to be management, including "interviewing, selecting, and training of employees; * * * [and] directing the work of employees[]").  Regarding 29 C.F.R. 541.100(a)(2), however, the trial court focused solely on whether Mr. Skidmore had managerial duties but did not consider whether Mr. Skidmore's "primary duty [wa]s management[.]"  29 C.F.R. 541.100(a)(2).

{¶12}  "To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work.  The term 'primary duty' means the principal, main, major or most important duty that the employee performs."  29 C.F.R. 541.700(a).

> Determination of an employee's primary duty must be based on *all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole*.  Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(Emphasis added.)  *Id*.  While the amount of time spent on exempt work is a useful guide in determining whether the work is the primary duty, it is not dispositive.  29 C.F.R. 541.700(b).  An employee may still be an exempt employee despite spending less than 50% of his or her time on executive work.  29 C.F.R. 541.700(b)-(c).

{¶13}  The trial court did not consider the amount of time Mr. Skidmore spent doing the exempt work and whether there existed a dispute of fact as to that question.  According to Mr. Skidmore, he spent 80-90% of his time performing manual work on machines and 10% of his time ordering maintenance parts.  Mr. Skidmore testified that he received the orders about what jobs the maintenance department needed to perform each day from Mr. Saraiva and that it was clear from the job orders who was to do which.  Essentially, Mr. Skidmore's testimony was that his distribution of the work within the maintenance department was ministerial and that he was more of a conduit for Mr. Saraiva's orders than a decision maker. Viewed in the light most favorable to him, Mr. Skidmore's testimony would support the conclusion that his direction of the people under him was not of great importance to NBMO.

{¶14} NBMO did submit evidence to indicate that Mr. Skidmore's managerial duties were important to its operation and that Mr. Skidmore spent most of his time performing exempt work. However, viewing the evidence in the light most favorable to Mr. Skidmore, there is a genuine dispute of fact as to whether his "primary duty [wa]s management[.]" 29 C.F.R. 541.100(a)(2).

{¶15} Regarding the requirement of 29 C.F.R. 541.100(a)(3) that an employee must "customarily and regularly" direct the work of two or more other employees, "[t]he phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. 541.701. Mr. Skidmore testified that the majority of the time he was at NBMO he had one employee under him. By contrast, the defendants asserted through their summary judgment materials that Mr. Skidmore supervised two to six employees on a daily basis. However, because this is summary judgment, we must view the evidence in the light most favorable to Mr. Skidmore as the non-movant. Thus, there is a genuine dispute of fact whether Mr. Skidmore "customarily and regularly" directed the work of two or more employees given his testimony that he usually only had one person reporting to him. 29 C.F.R. 541.100(a)(3).

{¶16} Finally, there is a genuine dispute of fact as to whether Mr. Skidmore's employment satisfied 29 C.F.R. 541.100(a)(4). 29 C.F.R. 541.100(a)(4) provides that, in order to be an exempt employee, the employee must have the authority to hire or fire other employees *or* his or her recommendations as to the hiring, firing, promotion, or similar change in circumstances of employment of other employees must be given particularized weight. Mr. Skidmore correctly points out that the trial court did not directly address this prong of the exempt

employee analysis nor do any of the material facts the trial court found to be undisputed go to this prong. The defendants urge us to decide whether there is no genuine dispute of fact regarding 29 C.F.R. 541.100(a)(4) in the first instance. However, this Court generally will not decide issues in the first instance, and, given the genuine disputes of material fact regarding 29 C.F.R. 541.100(a)(2)-(3), it would be inappropriate to do so in this case. *See Novak v. Giganti*, 9th Dist. Summit No. 26478, 2013-Ohio-784, ¶ 13

{¶17} There are genuine disputes of fact as to whether Mr. Skidmore was an exempt employee pursuant to 29 C.F.R. 541.100(a), and, therefore, the trial court should not have awarded summary judgment on Mr. Skidmore's claim under R.C. 4111.03. His second assignment of error is sustained.

ASSIGNMENT OF ERROR I

THE TRIAL COURT INCORRECTLY GRANTED SUMMARY JUDGMENT ON MR. SKIDMORE'S AGE DISCRIMINATION, DISPARATE TREATMENT, AND WORKER'S COMPENSATION RETALIATION CAUSES OF ACTION.

{¶18} Mr. Skidmore argues in his first assignment of error that the trial court incorrectly awarded summary judgment on his claims of age discrimination, disparate treatment, and worker's compensation retaliation. Mr. Skidmore argues that the trial court incorrectly applied the burden-shifting standard applicable in those causes of action in finding that he had failed to demonstrate that there was a genuine issue of material fact as to whether the defendants' legitimate business reason for his discharge was pretextual.

{¶19} "The ultimate issue in cases alleging employment discrimination under R.C. Chapter 4112 is whether the adverse employment action was motivated, at least in part, by discriminatory intent." *Drogell v. Westfield Group*, 9th Dist. Medina No. 11CA0011-M, 2013-Ohio-5262, ¶ 15. An employee may demonstrate discriminatory intent either through direct or

indirect evidence. *Id.* In the absence of direct evidence, courts apply a burden-shifting framework articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 800 (1973). *Id. See also Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 13-14 (Courts should apply the burden-shifting framework of *McDonnell Douglas* in cases of retaliatory discharge); *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 8-9 (applying the burden-shifting framework in an age discrimination case).[1]

> Under this paradigm, the plaintiff must first establish a "prima facie case" which in turn shifts the burden to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Assuming this occurs, the burden shifts back to the employee to establish that the employer's proffered explanation is a mere pretext for unlawful discrimination.

(Internal quotations, citations, and footnote omitted.) *Drogell* at ¶ 15.

{¶20} On appeal, Mr. Skidmore argues that the trial court incorrectly determined that there was no genuine dispute of material fact that the defendants had articulated a nondiscriminatory business reason for discharging him or, in the alternative, that there remained a dispute of fact as to whether that reason was pretextual. However, Mr. Skidmore's appellate arguments do not address the trial court's actual reasons for granting the defendants' summary judgment motion on his worker's compensation and disparate treatment claim, which was that Mr. Skidmore could not satisfy the prima facie prong of the burden-shifting analysis as a matter of law. To the extent that an argument could be made that the trial court erred in its conclusion, it is not this Court's duty to create one for Mr. Skidmore. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Accordingly, to the extent he challenges the trial court's decision to grant summary judgment on his worker's

---

[1] Mr. Skidmore's disparate treatment claim is actually a second allegation of age discrimination, alleging that he was treated differently than younger employees.

compensation and disparate treatment claims, Mr. Skidmore's first assignment of error is overruled.

{¶21} However, we conclude that Mr. Skidmore's argument that the trial court improperly awarded summary judgment on his age-discrimination claim has merit. In keeping with the burden-shifting paradigm, neither party disputes that Mr. Skidmore set forth a prima facie case of age discrimination. *See Coryell* at ¶ 20 ("[I]n order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age."). Mr. Skidmore argues, however, that there is a dispute of fact as to whether NBMO set forth a legitimate, nondiscriminatory reason for his firing or, in the alternative, there is a dispute of fact as to whether that reason was pretextual.

{¶22} In its motion for summary judgment, NBMO asserted that its reason for firing Mr. Skidmore was that he violated a company security policy requiring that all delivery drivers have ID and was also grossly negligent in his handling of the August 16, 2010 incident. Mr. Skidmore argues that there is a dispute of fact as to whether this was a legitimate business reason because he submitted evidence that the security policy was not generally enforced. However, the failure to follow a company security policy, especially when it results in an actual theft of property, could be a legitimate, nondiscriminatory reason to discharge an employee. Mr. Skidmore's argument actually addresses whether NBMO's articulated reason was pretextual.

{¶23} Mr. Skidmore submitted affidavits from multiple people who asserted that the security provision was not enforced by NBMO. While the trial court dismissed the affidavits as

unfounded because none of the affiants had worked in the metals room at NBMO, nothing in the record indicates that the security policy NBMO cited as the reason for discharging Mr. Skidmore was confined to the metals room. Also, Mr. Skidmore testified at his deposition that he had assisted loading materials from the metals room in the past and that no identification had ever been required before loading the truck. When viewed in the light most favorable to Mr. Skidmore, the fact that the security policy was not enforced would indicate that it was a pretext for discharging Mr. Skidmore.

{¶24} Regarding NBMO's assertion that Mr. Skidmore's actions were grossly negligent, there is a genuine dispute of fact as to whether his actions were egregious enough to warrant his discharge. Gross negligence is "[t]he intentional failure to perform a manifest duty *in reckless disregard* of the consequences as affecting the life or property of another." (Emphasis sic.) (Internal quotations and citations omitted.) *Mohat v. Horvath*, 11th Dist. Lake No. 2013-L-009, 2013-Ohio-4290, ¶ 23. Mr. Skidmore testified that he repeatedly asked to see evidence that the thief was entitled to take the scrap metal and even attempted to contact the person with whom the thief had indicated that he was working. Mr. Skidmore also testified that that he did not believe the thief would be able to leave before he had checked with the metals room manager because the thief was blocked in. Thus, there is a dispute of fact as to whether Mr. Skidmore's actions constituted reckless disregard for NBMO's property. *See id.*

{¶25} Furthermore, Mr. Skidmore offered to reimburse NBMO for the loss of the metal, essentially making the incident harmless for NBMO. Viewed in the light most favorable to Mr. Skidmore, NBMO's insistence of discharging Mr. Skidmore despite this offer supports Mr. Skidmore's assertion that its reason for discharging him was not the actual reason for his firing, especially given Mr. Skidmore's excellent performance reviews. NBMO argues that this offer

was irrelevant because it was unable to accept it without converting Mr. Skidmore from an exempt employee to a nonexempt employee for the purposes of R.C. 4111.03(A). However, as discussed above, there is a dispute of fact as to whether Mr. Skidmore actually was an exempt employee under R.C. 4111.03(A); if Mr. Skidmore was not an exempt employee then NBMO's argument as to why it refused the reimbursement would be less persuasive.[2]

{¶26} Accordingly, to the extent Mr. Skidmore argues that the trial court improperly awarded summary judgment on his claims of workers compensation and disparate treatment, his assignment of error is overruled. To the extent Mr. Skidmore argues that the trial court improperly awarded summary judgment on his age-discrimination claim, his first assignment of error is sustained.

ASSIGNMENT OF ERROR III

THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON MR. SKIDMORE'S BREACH OF CONTRACT CAUSE OF ACTION.

{¶27} In Mr. Skidmore's third assignment of error, he argues that the trial court improperly awarded summary judgment on his breach of contract claim because his employment contract was ambiguous and there was a material dispute of fact as to its meaning. We agree.

{¶28} "The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal." (Internal quotations and citations omitted.) *Town & Country Co-op, Inc. v. Sabol Farms, Inc.*, 9th Dist. Wayne No. 11CA0014, 2012-Ohio-4874, ¶ 15. "When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract

---

[2] Additionally, we note that NBMO has not cited to any authority that directly stands for the proposition that an exempt employee's *voluntary offer* of reimbursement would negate his or her exempt status. Instead, the authority cited by NBMO indicates that a company policy *requiring* reimbursement is problematic. In any case, we express no position on this issue at this time.

as a whole and presume that the intent of the parties is reflected in the language of the contract." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. "In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* "Where an ambiguity exists, however, interpretation of a contract involves both factual and legal questions. Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper." (Internal quotations and citations omitted.) *Town & Country Co-op* at ¶ 15. "Only if the terms of a contract may reasonably be understood in more than one sense can they be construed as ambiguous." *Id.*

{¶29} The "contract" in question is a letter of employment dated February 20, 2006, sent from NBMO to Mr. Skidmore.[3] The letter, in pertinent part, reads as follows:

The following terms and conditions are appropriate to your employment:

Salary: $ 52 000.00 per annum, payable bi-weekly

Working Hours: 7:00 a.m. to 16:00 p.m., Monday to Friday with one hour for lunch. Further to our discussions during the interview process, Maintenance is performed on weekends and will therefore require overtime within reasonable acceptable expectations.

Mr. Skidmore argues that the above language is ambiguous because he believed he was entitled to overtime payment for overtime work. He also points to his deposition testimony that Mr. Saraiva, in response to him asking about his overtime, told him that it would be coming.

---

[3] In the defendants' motion for summary judgment, they did not argue that the employment letter did not constitute an employment contract. Thus, for the purposes of this appeal, we treat it as a contract.

{¶30} "Overtime" is defined as "1. [t]he hours worked by an employee in excess of a standard day or week. * * * 2. [t]he extra wages paid for excess hours worked." *Black's Law Dictionary* 1137 (8th Ed.2004). *See also Merriam-Webster's Collegiate Dictionary* 886 (11th Ed.2005) (defining "overtime" as "1: time in excess of a set limit[;] * * * working time in excess of a standard day or week[;] 2: the wage paid for overtime[.]"). Thus, because "overtime" may have two meanings, it is important to read the word in context to determine its meaning. *See Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192 (1965).

{¶31} Unfortunately, reading the term in context does not lessen the ambiguity. The sentence referring to "overtime" begins with the phrase "[f]urther to our discussions during the interview process," making it unclear if the letter was intended to fully reflect the discussions or incorporate them. Because there is ambiguity in the contract, we must look to external evidence to discern the parties' intent. *See Town and Country Co-Op*, 2012-Ohio-4874, at ¶ 15. Although Mr. Saraiva denied that the parties intended for Mr. Skidmore to receive overtime, Mr. Skidmore testified during his deposition that he believed that he was supposed to receive overtime, that he kept records documenting the amount of overtime owed, and that, when he asked Mr. Saraiva about his overtime payments, Mr. Saraiva told him that they would be coming. When viewed in the light most favorable to Mr. Skidmore, the summary judgment materials demonstrate that there is a genuine issue of material fact as to whether Mr. Skidmore is contractually entitled to overtime.

{¶32} Accordingly, Mr. Skidmore's third assignment of error is sustained.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON MR. SKIDMORE'S CAUSES OF ACTIONS AGAINST MR. GREATHEAD AND MR. SARAIVA, AS WELL AS HIS PUNITIVE DAMAGES CLAIMS, BECAUSE IT WRONGFULLY CONCLUDED THAT THERE WERE NO QUESTIONS OF FACT SURROUNDING THE UNDERLYING CLAIMS AGAINST NATIONAL BRONZE.

**{¶33}** In Mr. Skidmore's fourth assignment of error, he argues that the trial court improperly awarded summary judgment on his punitive damages claims. It is unclear why the trial court decided to expressly rule that Mr. Skidmore was not entitled to punitive damage given that it determined that the defendants were entitled to summary judgment on all of his claims. *See Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 13 ("Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this state may be maintained simply for punitive damages.") (Internal quotations and citation omitted.). In any case, to the extent punitive damages are permissible for any of Mr. Skidmore's claims should he prevail, he may still pursue punitive damages on those claims that are outstanding upon remand.

**{¶34}** Mr. Skidmore also argues that the trial court's summary judgment awards to Mr. Greathead and Mr. Saraiva must be reversed. The trial court addressed the claims as they applied to all the defendants; thus, to the extent the trial court's decision regarding a cause of action is reversed, that reversal applies to all of the defendants.

**{¶35}** Mr. Skidmore's fourth assignment of error is sustained.

ASSIGNMENT OF ERROR V

IN ITS DECISION, THE TRIAL COURT IMPROPERLY IGNORED CRUCIAL EVIDENCE THAT WOULD HAVE BENEFITTED MR. SKIDMORE[] AND ACTUALLY WEIGHED EVIDENCE IN FAVOR OF THE MOVING PARTIES[.]

**{¶36}** Mr. Skidmore agues in his fifth assignment of error that the trial court improperly weighed evidence in conducting its summary judgment review. Mr. Skidmore points to the trial court's conclusions about undisputed facts in its analysis of his age discrimination claim and his claim for overtime pursuant to R.C. 4111.03(A). However, as discussed above, we reverse the trial court's award of summary judgment on those claims, and, therefore, Mr. Skidmore's fifth assignment of error is moot. *See* App.R. 12(A)(1)(c).

## III.

**{¶37}** Ms. Skidmore's second, third, and fourth assignments of error are sustained, and his first assignment of error is sustained in part. His first assignment of error is overruled in part, and his fifth assignment of error is moot. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR.

APPEARANCES:

PATRICK EBNER, Attorney at Law, for Appellant.

KENNETH S. STUMPHAUZER and ASHLEIGH B. ELCESSER, Attorneys at Law, for Appellees.