[Cite as *Mr. Pulpstone, L.L.C. v. The Shops on 58, L.L.C.*, 2021-Ohio-4467.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
| --- | --- |
| MR. PULPSTONE, LLC | C.A. No.     21CA011718 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THE SHOPS ON 58, LLC | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No.     20CV201165 |

DECISION AND JOURNAL ENTRY

Dated: December 20, 2021

CALLAHAN, Judge.

{¶1}     Appellant, Mr. Pulpstone, LLC ("Mr. Pulpstone") appeals a judgment of the Lorain County Court of Common Pleas in favor of appellee, The Shops on 58, LLC ("The Shops on 58"). This Court reverses.

I.

{¶2}     Mr. Pulpstone is a franchisee of Pulp Juice and Smoothie Bar in Lorain County that entered into a lease with The Shops on 58 for occupancy of one rental unit in a four-unit retail development. The lease provided that Mr. Pulpstone "shall have the exclusive right in the shopping center to engage as a specialty juice, smoothie, wrap and frozen yogurt shop." It also explained

> So long as [Mr. Pulpstone] is not in default of this Lease, [The Shops on 58] shall not permit or allow any other tenant in the shopping center of which the Premises is a part to engage in the selling of specialty juices, smoothies, wraps or frozen yogurt products as their primary business. Primary business for smoothies is defined as having no more than 4 smoothies offered on the menu at one time.

Additionally, there is to be no external or outward facing signage or advertisements promoting smoothies.

After executing the lease, Mr. Pulpstone learned that The Shops on 58 was in negotiations with a franchisee of Rita's Italian Ice ("Rita's") for the lease of space within the same shopping center. Mr. Pulpstone objected under the exclusive-use clause, but The Shops on 58 moved forward nonetheless.

{¶3} Mr. Pulpstone filed an action for declaratory judgment against The Shops on 58, requesting a declaration "that Rita's is a competitor under the terms of the Lease and is prohibited from leasing any space at The Shops on 58." Mr. Pulpstone also asserted a claim for breach or anticipatory breach of contract. The Shops on 58, on the other hand, maintained that Rita's was not in competition with Mr. Pulpstone as defined by the lease. Mr. Pulpstone moved for partial summary judgment with respect to its request for a declaratory judgment, and The Shops on 58 moved for summary judgment on both of Mr. Pulpstone's claims.

{¶4} The trial court determined that the word "smoothie," as used in the relevant paragraph of the lease, was unambiguous; that Rita's does not offer products for sale that fell within the definition of "smoothie"; and, therefore, that the lease permitted The Shops on 58 to lease a portion of the shopping center to Rita's. The trial court denied Mr. Pulpstone's motion for partial summary judgment, granted The Shops on 58's motion for summary judgment, and entered judgment in favor of The Shops on 58.

{¶5} Mr. Pulpstone appealed, raising two assignments of error. Because the second assignment of error is dispositive, it is addressed first in this Court's analysis.

II.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT FAILED TO APPLY THE PRINCIPLES OF CONTRACT
LAW TO THE EVIDENCE[.]

{¶6}   Mr. Pulpstone's second assignment of error argues that the trial court erred by concluding that the term "smoothie" was unambiguous and, as a result, failing to consider extrinsic evidence.  This Court agrees in part.

{¶7}   This Court reviews an order granting summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  Under Civ.R. 56(C), "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law."  *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10.  Likewise, this Court reviews legal determinations in a declaratory judgment de novo.  *See Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 14, 17; *Martin v. Steiner*, 9th Dist. Wayne No. 17AP0021, 2018-Ohio-3928, ¶ 10.

{¶8}   Mr. Pulpstone's second assignment of error raises a threshold question of law regarding the interpretation of the lease itself.  *See Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, ¶ 10, citing *Arnott* at ¶ 14; *Gotham v. Basement Care, Inc.*, 9th Dist. Summit No. 29105, 2019-Ohio-3872, ¶ 8, quoting *Watkins v. Williams*, 9th Dist. Summit No. 22162, 2004-Ohio-7171, ¶ 23.  As such, the material facts are not disputed.  *See generally Daso v. Creston Ins. Ctr., LLC*, 9th Dist. Wayne No. 17AP0039, 2018-Ohio-5312, ¶ 5.

{¶9}   "A lease is a contract between the landlord and the tenant."  *Christe v. GMS Mgt. Co., Inc.*, 124 Ohio App.3d 84, 88 (9th Dist.1997).  When considering the meaning of contract terms, this Court is guided by the principle that we must give effect to the parties' intentions.

*Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. The intentions of the parties are presumed to be reflected in the plain language used in the contract. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, ¶ 13. When reviewing a contract,

> [w]e will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning."

*Sunoco, Inc. (R & M)*, at ¶ 37, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11.

{¶10} Exclusive-use clauses, such as the one at issue in this case, are interpreted in the same manner. *See Rite Aid of Ohio, Inc. v. Marc's Variety Store, Inc.*, 93 Ohio App.3d 407, 413-414 (8th Dist.1994). Exclusive-use clauses must be construed narrowly, with any doubts "'resolved against a possible construction thereof which would increase the restriction upon the use of such real estate.'" *Id*. at 413, quoting *Loblaw, Inc. v. Warren Plaza, Inc.*, 163 Ohio St. 581, 592 (1955). *See also Kent State Univ. v. Univ. Coffee House, Inc.*, 10th Dist. Franklin No. 02AP-1100, 2003-Ohio-2950, ¶ 35. The intentions of the parties with respect to exclusive-use clauses are "to be gleaned from the contract language used unless there is some ambiguity." *Rite Aid of Ohio, Inc.* at 414. Ambiguity, in the context of an exclusive-use clause, must "be resolved in favor of a narrow construction[.]" *Id*.

{¶11} Because contracts must be construed with reference to the ordinary meaning of words, courts may rely upon dictionary definitions to establish their meaning. *Rite Aid of Ohio, Inc.* at 415, citing *Andrews v. Tax Commr.*, 135 Ohio St. 374, 376 (1939). *See also Commercial*

*Intertech Corp., f.k.a. Commercial Shearing, Inc. v. Guyan Internatl., Inc.*, 11th Dist. Portage No. 99-P-0119, 2001 WL 314869, *2 (Mar. 30, 2001) ("A dictionary definition does not amount to parol evidence. It is a reliable source for finding the plain and ordinary meaning of a word."). This Court has noted the use of dictionary definitions on many occasions. *See*, *e.g.*, *Dalton v. Massillon*, 9th Dist. Wayne No. 19AP0027, 2020-Ohio-1174, ¶ 18, 20; *Founders Ins. Co. v. Gurung*, 9th Dist. Summit Nos. 28508, 28511, 2017-Ohio-8983, ¶ 7; *Envision Waste Servs., LLC v. Cty. of Medina*, 9th Dist. Medina Nos. 15CA0104-M, 15CA0106-M, 2017-Ohio-351, ¶ 26. Other courts of appeals have done the same. For example, in considering the meaning of the term "drug store" for purposes of an exclusive-use clause, the Eighth District Court of Appeals concluded dictionary definitions provided "ample support" for the conclusion that the term "drug store" referred to "a store where prescriptions are filled, even if non-prescription items are also sold." *Rite Aid of Ohio, Inc.* at 414-415. In reaching this conclusion, the Court emphasized the consistency across the numerous dictionary definitions consulted by the trial court. *Id*. at 415.

{¶12} A contract term is ambiguous when it "'may reasonably be understood in more than one sense[.]'" *Envision Waste Servs., LLC* at ¶ 15, quoting *Town & Country Co-Op, Inc. v. Sabol Farms, Inc.*, 9th Dist. Wayne No. 11CA0014, 2012-Ohio-4874, ¶ 15. A term that has more than one possible meaning in its ordinary and usual sense must be considered in its context within the contract to discern the appropriate meaning. *Skidmore v. Natl. Bronze & Metals (Ohio) Inc.*, 9th Dist. Lorain No. 12CA010328, 2014-Ohio-4423, ¶ 30, citing *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192 (1965). When the context proves unhelpful in this regard, this Court has concluded that a contract term is ambiguous. *Skidmore* at ¶ 31.

{¶13} The exclusive-use clause at issue in this case provides:

So long as [Mr. Pulpstone] is not in default of this Lease, [The Shops on 58] shall not permit or allow any other tenant in the shopping center of which the Premises

is a part to engage in the selling of specialty juices, smoothies, wraps or frozen yogurt products as their primary business. Primary business for smoothies is defined as having no more than 4 smoothies offered on the menu at one time. Additionally, there is to be no external or outward facing signage or advertisements promoting smoothies.

The lease does not define the term "smoothies." Nonetheless, the "'mere absence of a definition * * * does not make the meaning of [a] term ambiguous.'" (Alteration in original.) *May v. Lubinski*, 9th Dist. Summit No. 26528, 2013-Ohio-2173, ¶ 13, quoting *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). In this circumstance, we look to whether there is a plain and ordinary meaning of the term. *See May* at ¶ 13.

{¶14} In its motion for summary judgment, The Shops on 58 referenced one dictionary definition of smoothie: "a creamy beverage made of fruit blended with juice, milk or yogurt." Noting that the lease did not define the terms "juice" or "yogurt," The Shops on 58 also referenced definitions of those terms from a dictionary and from the United States Food and Drug Administration. Notably, The Shops on 58 did not argue that the contract terms were unambiguous—rather, The Shops on 58 argued, as it has in this appeal, that the terms *were* ambiguous and, as a result, that the trial court was obligated to construe the exclusive-use provision narrowly.

{¶15} Mr. Pulpstone, in turn, referenced multiple definitions of the term "smoothie":

- A thick, smooth drink of fresh fruit pureed with milk, yogurt **or** ice cream. The New Oxford American Dictionary (Elizabeth J. Jewell & Frank Abate, eds., 2001)

- A creamy beverage made of fruit blended with juice, milk, **or** yogurt. Merriam-Webster's Collegiate Dictionary (11th ed., 2011)

- A drink made of fruit or sometimes vegetables, blended with juice, milk, **or** yogurt and often ice until smooth. The American Heritage Dictionary of the English Language (5th ed., 2011.)

(Emphasis in original.)  Contrary to the position taken by The Shops on 58, however, Mr. Pulpstone maintained that there was no ambiguity in the lease on this point.  In response, The Shops on 58 argued that the diversity within the definitions referenced by Mr. Pulpstone proved the existence of ambiguity.

{¶16}  The trial court noted that the lease itself does not define "smoothie" "[a]side from distinguishing 'smoothies' from 'specialty juices' and 'frozen yogurt products[.]'"  The trial court also acknowledged that the relevant definitions of "smoothie" differed but concluded that "the fact that some secondary sources may have different definitions for the word 'smoothie' is not dispositive of whether it is ordinary or ambiguous."  Without looking to the context of the lease to determine whether one definition should be favored over another, the trial court concluded that "smoothie" is an unambiguous term and adopted a plain and ordinary meaning of its own.  Noting that "the margins between products of this type are tight," the trial court nonetheless determined "that smoothie is not ambiguous and has a plain and ordinary meaning which is 'a creamy blended beverage made with fruit and juice, milk, or yogurt.'"

{¶17}  When determining whether a contract term is ambiguous, however, it is incumbent upon courts look to context in order to discern which of competing definitions comports with the parties' intentions.  *See Skidmore*, 2014-Ohio-4423, at ¶ 30, citing *Carroll Weir Funeral Home*, 2 Ohio St.2d at 192; *Rite Aid of Ohio*, 93 Ohio App.3d at 414.  *See generally Beverage Holdings, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, at ¶ 13; *Sunoco, Inc. (R & M)*, 129 Ohio St.3d 397, 2011-Ohio-2720, at ¶ 37.  When the parties' intentions cannot be determined with resort to the use of the term in context, that term is properly considered ambiguous.  *Skidmore* at ¶ 31.

{¶18} In this case, the trial court erred by resolving competing definitions of the term "smoothie" without considering the parties' intentions, as reflected in the context of the agreement itself. The trial court's resulting conclusion that the term is unambiguous is error for this reason.[1] Mr. Pulpstone's second assignment of error is sustained solely on this basis.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT FAILED TO PROPERLY CONSIDER THE WEIGHT OF
THE EVIDENCE PRESENTED.

{¶19} Mr. Pulpstone's first assignment of error argues that the trial court erred by granting summary judgment to The Shops on 58 because the evidence submitted in support of the parties' respective motions for summary judgment did not support the trial court's conclusion. In light of this Court's resolution of Mr. Pulpstone's second assignment of error, the first is premature.

III.

{¶20} Mr. Pulpstone's second assignment of error is sustained. The first assignment of error is premature. The judgment of the Lorain County Court of Common Pleas is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

---

[1] This Court makes no determination regarding whether, with due consideration of the context, the term "smoothie" is ultimately ambiguous.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

BRIAN C. LEE, Attorney at Law, for Appellant.

MARK E. STEPHENSON, Attorney at Law, for Appellee.