[Cite as *Michael A. Gerard, Inc. v. Haffke*, 2013-Ohio-168.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98488

## MICHAEL A. GERARD, INC. D.B.A. CHILDCARE SOLUTIONS

PLAINTIFF-APPELLANT

vs.

## ROBERT HAFFKE, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Shaker Heights Municipal Court
Case No.   11 CVI 01527

**BEFORE:**   Keough, J., Stewart, A.J., and Blackmon, P.J.

**RELEASED AND JOURNALIZED:**   January 24, 2013

**ATTORNEY FOR APPELLANT**

L. Bryan Carr
1392 SOM Center Road
Mayfield Heights, Ohio   44124

**FOR APPELLEES**

Robert Haffke
Louise Haffke
3264 Kenmore Road
Shaker Heights, Ohio   44122

KATHLEEN ANN KEOUGH, J.:

{¶1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶2} Plaintiff-appellant, Michael A. Gerard, Inc., d.b.a. Childcare Solutions, appeals the trial court's decision entering judgment in favor of defendants-appellees, Robert and Louise Haffke. Finding merit to the appeal, we reverse the trial court's judgment and remand for the trial court to enter judgment in favor of Gerard and award damages accordingly.

{¶3} In August 2011, the Haffkes entered into a written contract ("Client Contract") with Gerard for assistance in hiring a long-term childcare provider — a nanny. The contract required the Haffkes to pay a nonrefundable search fee of $175, which has been paid and is not in dispute.

{¶4} Gerard provided the Haffkes with a list of names and contact information for potential nannies. On September 19, 2011, the Haffkes interviewed one of the candidates, Robin Powelson, and on September 27, the Haffkes offered Powelson the nanny position, which she accepted. On this same day, Gerard was notified by both the Haffkes and Powelson that they had reached a verbal employment agreement of $15 per hour at 36 hours a week, and with a start date of November 7. Also on September 27, Gerard contacted the Haffkes by email confirming the hiring of Powelson. The email specifically stated: "Congratulations on selecting Robin Powelson as your new nanny!

She is very excited about the opportunity and working with your family."

{¶5} On October 3, 2011, after learning that Powelson was accepted by the Haffkes, and pursuant to various sections of the Client Contract, Gerard charged the Haffkes's credit card the placement fee of $2,106, which would have been a percentage of Powelson's yearly salary.

{¶6} On October 17, 2011, Powelson came to the Haffkes' home to discuss additional details of employment. Powelson was at their home for four hours, and was compensated $60, however, the Haffkes denied that Powelson provided any services to them or their children.

{¶7} On October 24, 2011, the Haffkes sent Gerard an email explaining that their circumstances had changed, that they would not be needing the services of Powelson, and they requested that Gerard refund the $2,106 placement fee. Gerard refused to refund the placement fee because according to the Client Contract, it was nonrefundable; however, Gerard offered the Haffkes a credit in the amount of $2,106 for any future services offered by Childcare Solutions.

{¶8} The Haffkes disputed the charge with their credit card company. The company reversed the charge pending the resolution of the dispute. However, prior to resolution, Gerard filed suit against the Haffkes for $2,106 and the bank fees associated with the dispute. It was revealed at trial that the credit card company re-instated the charge on the Haffkes' account. Accordingly, Gerard was only seeking damages in the amount of $259 representing the amount of the bank fees associated with the disputed

charge.

{¶9} Following a bench trial on Gerard's complaint, the magistrate entered judgment in favor of the Haffkes. The magistrate in its findings of fact and conclusions of law determined that conflicting clauses existed in the Client Contract on when the placement fee was due. The magistrate stated that any ambiguity in a contract is to be construed against the drafting party. Accordingly, the magistrate held that because the Haffkes reasonably relied on the clause that provided that the placement fee was not due unless they used the services of the care provider and they never used Powelson's services, the Haffkes were not liable for the placement fee. The trial court ultimately approved the magistrate's decision and overruled Gerard's timely objections to the magistrate's decision. This appeal follows with two assignments of error presented for our review. Finding Gerard's second assignment of error dispositive, it will be addressed first.

{¶10} In his second assignment of error, Gerard contends that the trial court erred in finding ambiguity in the contract documents; thus, erred in entering judgment in favor of the Haffkes.

{¶11} The question of whether a contract is ambiguous is a question of law to which this court applies a de novo standard of review. *Progress Properties, Inc. v. Baird & Patterson*, 8th Dist. Nos. 70286 and 70287, 1997 Ohio App. LEXIS 4717 (Oct. 23, 1997), citing *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.*, 65 Ohio App.3d 139, 583 N.E.2d 340 (10th Dist.1989); *Seringetti Constr. Co. v. Cincinnati*, 51 Ohio App.3d 1,

553 N.E.2d 1371 (1st Dist.1988). A contract is ambiguous when it is susceptible to more than one reasonable interpretation. *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 177, 556 N.E.2d 1186 (1990).

{¶12} In this case, the trial court held that the contract contained four conflicting clauses regarding when the placement fee was due. The Haffkes contend that they were liable for the placement fee only if they used the services of the care provider. They contend that because they never used Powelson's services, they were not liable for the placement fee. They rely on paragraph 2 of the Client Contract, which states: "Client agrees that if he/she/they use(s) the services of a Care Provider referred by Service pursuant to the terms and conditions of this Agreement[,] Client shall be liable to Service for any and all fees specified in this Agreement." Additionally, the Haffkes deny they "hired" Powelson.

{¶13} However, Gerard contends that the placement fee was due when Powelson was hired or was accepted by the Haffkes. In paragraph 4, the contract provides that the placement fee is due "at the time a referral is accepted." In paragraph 4(A), the contract provides that the placement fee is due "Upon acceptance of a Care Provider to be engaged as a long-term employee, a Placement Fee will be incurred per the fee schedule in effect at the time." In paragraph 5, the contract provides that "placement fees are due upon hire." In paragraph 5(A), the contract further provides that "Acceptance of a referral by Client constitutes authorization for Service to charge fees due directly to Client's credit card on file with Service without further authorization. Payment of placement fees are

due upon a care provider's acceptance of your job offer and shall be guaranteed by a major credit card." Finally, the contract's credit card authorization section, which Mr. Haffke electronically signed, states, "I understand that once I have accepted a requested service and accepted a referral, placement fees are nonrefundable."

{¶14} Accordingly, while we agree with the trial court that the contract contains conflicting language regarding fees, we disagree with the trial court's only statement of law that when an ambiguity exists, the contract must be construed against the drafter. *See Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314, 1996-Ohio-393, 667 N.E.2d 949. Rather, this rule is a secondary rule of contract construction and is not applicable when a primary rule of contract construction clarifies the meaning of the contract. *Malcuit v. Equity Oil & Gas Funds, Inc.*, 81 Ohio App.3d 236, 240, 610 N.E.2d 1044 (9th Dist.1992). It is a primary rule of contract construction and interpretation that when confronted with an ambiguous contract, a court must first examine parole evidence to determine the parties' intent.

When interpreting ambiguous contracts, courts must make a legitimate attempt, after hearing the relevant parol evidence, to determine the intent of the contracting parties. * * * *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "Where application of this rule makes the meaning of the language clear, the secondary rule of construction of strict construction [sic] against the drafter is not applicable." *Malcuit v. Equity Oil & Gas Funds, Inc.* (1992), 81 Ohio App.3d 236, 240, 610 N.E.2d 1044, 1046.

*Cline v. Rose*, 96 Ohio App.3d 611, 615, 645 N.E.2d 806 (3d Dist.1994) Moreover, Ohio courts have generally resolved contract ambiguities against the drafter only where parties lacked equal bargaining power to select contract language. *See, e.g., G.F. Business Equip., Inc. v. Liston*, 7 Ohio App.3d 223, 224, 454 N.E.2d 1358 (10th

Dist.1982).

{¶15} In this case, the trial court did not evaluate or determine the intent of the parties. Therefore, under our de novo review of contract interpretation, we first must consider the intent of the parties.

{¶16} The evidence and testimony at trial demonstrated that it was the intent of Gerard that the Haffkes were liable for the placement fee when Powelson accepted the position with the Haffkes. Accordingly, Gerard reasonably relied on this placement and assessed the placement fee.

{¶17} While the intent of Gerard is clear, we find that the Haffkes' inactions in this process make their intent clear as well. First, when Gerard was advised by both the Haffkes and Powelson that an offer was extended and accepted, he sent an email to the Haffkes congratulating them on their decision to hire Powelson. If the Haffkes had not "hired" or offered her a position to which she accepted, it is reasonable to assume that the Haffkes would have notified both Gerard and Powelson that they did not hire Powelson.

{¶18} Additionally, we note that the Haffkes only disputed the placement fee charge after they decided not to use Powelson's services. If the Haffkes believed that the placement fee was not payable to Gerard until after they used Powelson's services, then they would have disputed the charge immediately once the charge was made or when they discovered the charge after receiving their credit card statement. Accordingly, we find it reasonable to assume that it was their understanding that the placement fee was due upon acceptance of the referral.

{¶19} Finally, "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms." *Cheap Escape Co. Inc. v. Crystal Windows & Doors Corp.*, 8th Dist. No. 93739, 2010-Ohio-5002, ¶ 17. One party is not required to explain each contract provision to the other party before signing the document. *Id.*, citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 503, 1998-Ohio-612, 692 N.E.2d 574. A party to a contract is presumed to have read and understood the terms and is bound by a contract that he willingly signed. *Id.*, citing *Preferred Capital, Inc. v. Power Eng. Group Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 10.

{¶20} In this case, there are at least four areas specifically providing that placement fees are due upon "acceptance of a referral" and one general provision that if the client uses the services of a provider, then they are liable for all fees under the Client contract.

{¶21} There is no evidence in the record that the Haffkes did not understand or question any provision of the Client Contract prior to signing the document. Moreover, the record reflects that Mr. Haffke is an attorney and he would have fully understood the terms and conditions of the contract; thus, no unequal bargaining power exists that would warrant ambiguities to be construed against the drafter.

{¶22} Based on the evidence, we find that the intent of parties when executing the contract was that the placement fee was due upon acceptance of the referral. Accordingly, the placement fee was due when the Haffkes offered Powelson the job, she

accepted, and the parties notified Gerard.   The assigment of error is sustained.

{¶23} Having sustained Gerard's second assignment of error, the first assignment of error contending that the trial court merely "rubber stamped" the magistrate's decision is rendered moot.

{¶24}   Judgment reversed and cause remanded for the trial court to enter judgment in favor of Gerard and award damages accordingly.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, A.J., and
PATRICIA ANN BLACKMON, P.J., CONCUR