[Cite as *Collins v. Hearty Invest. Trust*, 2015-Ohio-400.]

STATE OF OHIO    )    IN THE COURT OF APPEALS
          )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT  )

JOHN C. COLLINS, Executor of the    C.A. No.  27173
ESTATE OF HUGH HEARTY, Deceased,
et al.

    Appellees        APPEAL FROM JUDGMENT
                ENTERED IN THE
    v.           COURT OF COMMON PLEAS
                COUNTY OF SUMMIT, OHIO
HEARTY INVESTMENT TRUST, et al.    CASE No.  CV 2010 05 3319

    Appellants

DECISION AND JOURNAL ENTRY

Dated: February 4, 2015

CARR, Judge.

**{¶1}** Appellants, the trustee and sibling beneficiaries of the Hearty Investment Trust, appeal from a judgment of the Summit County Court of Common Pleas in favor of Appellees, Lisa Siegenthaler Hearty and John Collins, executor of the estate of Lisa's late husband, Hugh Hearty (the "Estate"). The judgment declared that Hugh had effectively transferred his share in the Hearty Investment Trust to Lisa through a codicil to his will and that the Estate was entitled to payment of certain debts from Hugh's share of the Trust. The judgment also provided that the sibling beneficiaries could satisfy the monetary obligations of the Trust to Lisa and the Estate by paying the entire value of Hugh's share in the Trust. This Court reverses and remands to the trial court.

I.

{¶2}    This controversy involves two provisions of the Hearty Investment Trust ("the Trust"), which Hugh and his four siblings executed in 1996 and amended in 2007.  Because two trusts and several of the relevant people in this case share the Hearty surname, this Court will refer to Hugh and Lisa by their first names and will use descriptive terms for the two trusts and other parties in this case.

{¶3}    After Hugh died in 2008, a disagreement arose about whether he had effectively transferred his share of the Trust to Lisa through a power of appointment.  As originally executed in 1996, the Trust restricted the power of appointment with pages of specific language about how the power could be exercised and whom a sibling could appoint to receive his share.  The restrictions required that the power be exercised with specific language, focused on passing Trust shares to lineal descendants, and limited the amount and duration of income distributions that could pass to a sibling's spouse.

{¶4}    The five siblings later made amendments to the Trust that became effective on May 1, 2007, including substantial changes to the power of appointment.  Notably, the amendments reduced the restrictions and simplified the manner in which the power of appointment could be exercised.  Two pages of details from the original Trust were reduced to a single paragraph.  Of relevance here, the amended Trust authorized Hugh (or any of the siblings) to appoint his spouse to receive his entire Trust share.

{¶5}    The parties agree that the relevant language of the Trust, as amended, was in full force and effect at the time Hugh died; that the Trust authorized Hugh to appoint Lisa to receive his entire share of the Trust; and that if Hugh did not effectively exercise his power to appoint

Lisa to receive his share, his share passed to a bypass trust, from which Lisa would receive no income or other benefit.

{¶6} The parties' dispute about Hugh's attempt to exercise the power of appointment is whether he did so through a means that was authorized by the Trust. In relevant part, paragraph 5(A) of the amended Trust authorizes each sibling/grantor to exercise the power of appointment in the following manner:

> [E]ach of the Grantors may appoint his or her trust share by Last Will and Testament made before or after the effective date of the Trust Agreement in the manner provided below. * * * The Grantor's Will must make specific reference to this limited power of appointment. * * *. If the exercise of the limited power of appointment is in the form of a trust, the trustee of this instrument shall also serve as trustee under the trust created in accordance with the power of appointment.

Although paragraph 5(A) includes details about how much of a sibling's share may be transferred and who else a sibling may appoint to receive his share, none of that language is relevant to this controversy.

{¶7} According to the record, Hugh attempted to exercise his power of appointment through a 2007 codicil to his 2003 will. Although the codicil made specific reference to the power of appointment, as required by the Trust, it was not properly executed as an enforceable codicil to an Ohio will because it was not signed by two witnesses. *See* R.C. 2107.03.

{¶8} The parties dispute whether Hugh's execution of an invalid codicil to his will was an effective means of exercising his power of appointment under the terms of the Trust. The Trustee and Hugh's siblings ("the Siblings") argued that the Trust required Hugh to exercise the power of appointment through a single means: a legally valid Last Will and Testament. Because Hugh's 2007 codicil was not legally enforceable as an amendment to his 2003 will, they maintained that Hugh had not effectively exercised the power of appointment through his "Last

Will and Testament." Therefore, the Trustee determined that Lisa had no right to receive Hugh's Trust share and that his share passed to the bypass trust.

{¶9} Lisa and the Estate, on the other hand, suggested that the language of paragraph 5(A) was ambiguous about the means by which the power of appointment could be exercised. Specifically, they asserted two potential points of ambiguity: (1) that it was not clear from the language of the Trust that Hugh's Last Will and Testament was the sole means of exercising the power of appointment and (2) it was not clear that he was required to exercise the power of appointment through a legally valid Last Will and Testament. Consequently, they pointed to extrinsic evidence about the intent of the siblings in executing and amending the Trust and Hugh's intent in executing the 2007 codicil to his will.

{¶10} An unrelated dispute arose between the Estate and the Trustee about another provision of the Trust, which obligated the Trust to pay certain expenses of a deceased sibling's estate. Paragraph 3(E) of the Trust has remained the same since the Trust was executed in 1996 and provides for the payment of administration costs and other estate debts from a deceased sibling's share of the Trust "to the extent that the Trustee determines that non-Trust assets are not available for such purpose[.]" The Estate submitted over $160,000 in debts to the Trustee in 2008 and presented documentation in December 2008 that, at that time, there were insufficient assets in the Estate to cover the debts. The Trustee did not pay any of those debts because he believed that there were sufficient non-trust assets "available" in Hugh's estate to cover them.

{¶11} On May 10, 2010, Lisa and the Estate filed this action against the Trust, the Trustee, and the Siblings, and later added the bypass trust as a party defendant. Through amendments to the original complaint, Lisa and the Estate sought a declaration that Hugh had

effectively appointed Lisa to receive his entire share of the Trust and that the Trustee was required to pay the Estate debts submitted to him in 2008.

{¶12} The matter proceeded to a bench trial and the parties presented extensive evidence about the intentions of the five Hearty siblings in amending the Trust and about Hugh's attempt to exercise the power of appointment. Based on the extrinsic evidence of the parties' intentions, without a finding that any term of the Trust was ambiguous, the trial court entered judgment in favor of Lisa and the Estate.

{¶13} The trial court declared that Hugh had effectively exercised the power of appointment so that his Trust share passed to Lisa and that the Estate was entitled to be paid by the Trust for the debts it submitted to the Trustee in 2008, insofar as the Estate account did not hold sufficient assets at that time to cover those debts. The trial court's judgment further provided that the Siblings could satisfy the Trust's obligations to Lisa and the Estate by paying a lump sum judgment, equivalent to the value of Hugh's share of the Trust, plus interest. The Trustee and Siblings appealed, raising three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DECLARING THAT PLAINTIFF LISA SIEGENTHALER WAS MADE A BENEFICIARY OF THE HEARTY INVESTMENT TRUST BY MEANS OF AN INVALID CODICIL – ONE THAT DID NOT CONFORM TO THE WITNESS AND ATTESTING REQUIREMENTS OF OHIO LAW.

{¶14} The first assignment of error is that the trial court erred in concluding that Hugh effectively exercised his power of appointment through a 2007 codicil to his 2003 will. The parties agree that Hugh signed a prepared codicil document, which referred to the power of

appointment, but that he did not properly execute it as required by R.C. 2107.03 because no witnesses signed the document.

{¶15} The only issue raised by this assignment of error is whether the trial court correctly concluded that the Trust authorized Hugh to exercise the power of appointment through an invalid codicil to his will. In relevant part, paragraph 5(A) of the Trust authorized each sibling/grantor to exercise the power of appointment in the following manner:

> [E]ach of the Grantors *may* appoint his or her trust share by Last Will and Testament made before or after the effective date of the Trust Agreement in the manner provided below. * * * The Grantor's Will must make specific reference to this limited power of appointment. * * *. *If the exercise of the limited power of appointment is in the form of a trust*, *the trustee of this instrument shall also serve as trustee under the trust created in accordance with the power of appointment.* (Emphasis added.)

{¶16} The parties dispute the meaning of paragraph 5(A) in two relevant respects: (1) whether it authorized Hugh to exercise the power of appointment by a means other than through his "Last Will and Testament" and (2) whether the term "Last Will and Testament" required that Hugh exercise the power through a legally valid will. These two arguments are distinct, as they are based on different language in paragraph 5(A)

### Means of Exercising the Power

{¶17} Lisa and the Estate argued that Hugh was authorized to exercise the power of appointment through a means other than his Last Will and Testament by pointing to the language that this Court has italicized in paragraph 5(A): the term "may" in the first sentence and the last quoted sentence that refers to exercising the power of appointment in the form of a trust. They argued that, because the term "may" is discretionary, the Trust permitted, but did not require, that the power of appointment be exercised through Hugh's Last Will and Testament. They also pointed to the sentence about exercising the power in the form of a trust, asserting that the

siblings were also authorized to exercise the power of appointment through an inter vivos trust as an alternate means to exercising the power through his Last Will and Testament.

### "Last Will and Testament"

{¶18} Next, because the Trust does not explicitly require that the power of appointment be exercised through a *legally valid* Last Will and Testament, the parties dispute whether Hugh's invalid 2007 codicil to his 2003 will was an effective means of appointing Lisa to receive his Trust share. In the trial court and again on appeal, Lisa and the Estate intertwined their legal arguments about whether the language of paragraph 5(A) was ambiguous with extrinsic evidence about the underlying intentions of Hugh and the Siblings.

{¶19} In interpreting the relevant terms of the Trust, absent determining the existence of an ambiguity, the trial court had no authority to resort to extrinsic evidence to interpret an operative term of the Trust. *Robinson v. Beck,* 9th Dist. Summit No. 21094, 2003-Ohio-1286, ¶ 10; *Frederick v. Cocca Dev., Ltd.*, 7th Dist. Mahoning No. 05 MA 107, 2006-Ohio-7273, ¶ 44. When the language of a written document is clear and unambiguous, the determination of the intent of the parties is made as a matter of law and is necessarily confined to the plain language of the written document, in this case, the relevant portions of the Trust. *Id.* Extrinsic evidence cannot be used to create an ambiguity in the meaning of a term. *Frederick* at ¶ 41.

{¶20} In other words, the trial court was first required to determine, as a matter of law, whether there was an ambiguity in any of the relevant terms of the Trust and that determination was confined to examining the language of the Trust document. Only if the court found that a relevant Trust term was ambiguous did it have authority to consider extrinsic evidence and make factual findings about what the parties intended the terms of the Trust to mean. *See Maverick Oil & Gas, Inc. v. Bd. of Edn. of Barberton City School Dist.*, 171 Ohio App.3d 605, 2007-Ohio-

1682 (9th Dist); *See also Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist.1989), citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978) and *Amstutz v. Prudential Ins. Co.*, 136 Ohio St. 404, 408 (1940).

**{¶21}** In this case, the record suggests that the trial court may have improperly considered extrinsic factual evidence about the parties' intentions in order to interpret the trust document itself without first making the requisite legal finding that one or more of the relevant Trust terms was ambiguous. In this regard, we note that the court made no explicit finding that there was ambiguity in any of the operative language of paragraph 5(A).

**{¶22}** The trial court's failure to make an explicit finding of ambiguity is particularly troubling in this case because Lisa and the Estate raised two ambiguity arguments based on different terms in paragraph 5(A) of the Trust, either or both of which may have persuaded the trial court to find an ambiguity. Conversely, in light of the record and the trial court's entry, it is possible that the court employed extrinsic evidence to interpret the trust document itself, notwithstanding its view that none of the language in the trust was ambiguous. It is also possible that the trial court improperly considered the extrinsic evidence without making any implicit finding of ambiguity.

**{¶23}** Given the lack of an ambiguity finding by the trial court, and our inability to discern the manner in which the trial court actually interpreted the Trust, this Court cannot "review" the trial court's decision on this issue. Even though this Court conducts a de novo review of a trial court's legal determination about the ambiguity of a trust term, here we have no determination before us to review. "A reviewing court, even though it must conduct its own [de novo] examination of the record, has a different focus than the trial court." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). If this Court were to make the ambiguity

determination for the first time on appeal, we would not be sitting as a reviewing court but would, in effect, assume the role of the trial court. *Id.*

{¶24} It is unclear whether the trial court made a legal conclusion about the ambiguity of the relevant terms of paragraph 5(A) of the Trust and this Court cannot make that determination for the first time on appeal. The first assignment of error is sustained for that reason.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN PLAINTIFFS' FAVOR ON THE CLAIM FOR PAYMENT OF ESTATE DEBTS AND EXPENSES.

{¶25} The second assignment of error is that the trial court erred in concluding that the Estate was entitled to recover $164,513.51 plus interest from the Trust because it submitted Estate debts to the Trustee in August 2008, and presented documentation that, as of December 2008, the Estate's account lacked available assets to pay that portion of the Estate debts. Again, this Court is asked to review a trial court decision without the requisite legal conclusions or factual findings to enable us to do so.

{¶26} The Estate sought recovery of its debts pursuant to paragraph 3(E) of the Trust, which provides, in relevant part:

Upon the Grantor's death, there shall be distributed to the Grantor's estate (to the extent the Trustee determines that non-trust assets are not available for such purpose) from his or her Trust Share such an amount as the Grantor's executor or administrator certifies is not greater than [the amount of death taxes, and normal and usual costs of administering the estate and debts of the grantor or his estate].

{¶27} The parties do not dispute that the language of paragraph 3(E) provides for the payment of estate expenses from a deceased sibling's share of the Trust, nor do they dispute that

the Estate submitted debts that could qualify for payment under this provision "to the extent the Trustee determines that non-trust assets are not available for such purpose."

{¶28} Although the parties disputed the meaning of the term "available" as well as the scope of the Trustee's obligation to "determine" whether non-trust assets were "available" to cover the debts, the trial court failed to explain the meaning of either term. Specifically disputed by the parties was whether "available" non-trust assets referred to those that were in the Estate account at a given point in time or whether the term referred to the total assets of the Estate, as reflected in its inventory. The parties' disagreement about the obligation of the Trustee to make that determination is not entirely clear from the record.

{¶29} The trial court's declaration about the rights and obligations of the parties under paragraph 3(E) simply stated that the Trust was obligated to pay the debts of the Estate that were submitted to the Trustee in August 2008, to the extent that the Estate lacked assets "at that same time" to pay the debts. However, this Court cannot determine from the trial court's judgment whether it found the Trust provisions plain and unambiguous and thus construed those terms as a matter of law or based on the extrinsic evidence presented by the parties. For example, although the parties offered various arguments concerning disputed terms, the court did not explicitly define the meaning of term "available" in paragraph 3(E) nor did it explain the scope of the Trustee's obligation to make the determination of whether non-trust assets were available to pay the Estate debts.

{¶30} Again, this Court would exceed its role as a reviewing court if it were to interpret this provision for the first time on appeal. Accordingly, the second assignment of error is sustained.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN ENTERING A MONEY JUDGMENT AGAINST THE INDIVIDUAL DEFENDANTS – PARTIES WHO HAD NO CUSTODY OR CONTROL OVER HUGH HEARTY'S SHARE.

{¶31} Because this Court has sustained the first and second assignments of error, and remands the matter to the trial court for a new determination of the claims against the Trust, the trial court must also reconsider whether to enter a monetary judgment against the defendants. Consequently, this Court need not reach the merits of the third assignment of error.

### III.

{¶32} The first and second assignments of error of the Trustee and the Siblings are sustained and this Court does not address the merits of the third assignment of error. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for proceedings consistent with this opinion.

Judgment reversed and
cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
DONNA J. CARR
FOR THE COURT


BELFANCE, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

ROBERT L. TUCKER, JOHN R. CHLYSTA, and FRANK G. MAZGAJ, Attorneys at Law, for Appellants.

MICHAEL J. ELLIOTT and LAWRENCE J. SCANLON, Attorneys at Law, for Appellees.

THOMAS F. HASKINS, JR., Attorney at Law, for Appellee.