[Cite as *Envision Waste Servs., L.L.C. v. Medina*, 2017-Ohio-351.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

ENVISION WASTE SERVICES, LLC

    Appellant/Cross-Appellee

v.

COUNTY OF MEDINA, et al.

    Appellees/Cross-Appellants

C.A. No.    15CA0104-M
                15CA0106-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    15 CIV 0140

DECISION AND JOURNAL ENTRY

Dated: January 31, 2017

CARR, Presiding Judge.

{¶1}    Appellant/Cross-Appellee Envision Waste Services, LLC ("Envision") appeals the judgment of the Medina County Court of Common Pleas. Appellees/Cross-Appellants the County of Medina, Board of County Commissioners of Medina County, and the Medina County Solid Waste Management District (collectively "Medina") also appeal the trial court's judgment. This Court affirms in part, reverses in part, and remands.

I.

{¶2}    In October 2009, the Board of County Commissioners of Medina County published a request for bids for the operation and maintenance of the Medina County Central Processing Facility ("CPF") and compost facilities in order to process all solid waste generated and collected within the Solid Waste District of Medina County. Potential bidders were permitted to submit questions in writing; answers were supplied in writing to the potential bidders. Ultimately, Envision was awarded the contract to operate the facilities. The contract

specifies that numerous documents are incorporated into the contract and are labeled as "contract documents." They include, inter alia, the request for bids, Envision's bid form, the instructions to bidders, the addendum(a), resolution, general conditions, and detailed specifications.

{¶3} In February 2010, Envision invoiced Medina County's Sanitary Engineer, James Troike, for reimbursement of local fees Envision paid at the landfill for the month of January 2010. Envision believed that it was entitled to recover the fees based upon language in the detailed specifications that provided for the reimbursement of "[l]ocal fees associated with the operation of the facilities" as "pass-through costs." Mr. Troike issued a letter refusing to pay the invoice citing to another portion of the detailed specifications concerning "End-Waste Residue Discharge Management[.]" That provision provided in part that, "[t]he cost of transportation and payment of all disposal costs of the end-waste, residue, or recyclable material are the responsibility of [Envision]." In his letter, Mr. Troike maintained that the provision concerning fees referenced costs associated with the operation of the facilities not the disposal of end-waste. Mr. Troike also referenced the answer to Pre-Bid Question No. 5 from Rumpke Recycling (which was directed at the "Blue Bag Program[,]" which will be discussed below), indicating that that answer "specifically addresse[d] this issue." That answer stated in part that "[t]he disposal costs (landfill gate charges for disposal and transportation) are costs paid by the Contractor."

{¶4} The parties attempted to resolve the dispute through the dispute-resolution clause in the contract but were unable to resolve the issue. While Envision disagreed with Medina's determination, it deferred additional monthly billing for the fees. In the final invoice, in 2015, Envision billed for the entire amount of the fees over the term of the contract ($1,020,046.21). Medina refused to pay the invoice.

{¶5} As a result, in February 2015, Envision filed a complaint against Medina alleging one count for breach of contract related to Medina's nonpayment of the fees. Medina answered and also filed three counterclaims against Envision. Medina asserted in the first counterclaim that Envision breached the contract by failing to operate the Blue Bag Program for the duration of the contract. The Blue Bag Program involved the importation of recyclables from outside of Medina County for processing at the CPF. Blue bags themselves refer to recyclable materials that are placed into blue bags by residents and, thus, are separate from other solid waste. Envision and Medina shared the revenue from this program. In the second counterclaim, Medina alleged that Envision breached the contract by failing to maintain the CPF in a reasonably clean state and by failing to maintain the CPF. Finally, in the third counterclaim, Medina alleged that Envision breached the contract by failing to notify and receive approval when it changed facilities used for the final disposal of end-waste. Medina ultimately filed a notice of dismissal of count three of their counterclaim. Envision filed an amended complaint, adding a claim for unjust enrichment.

{¶6} In October 2015, Envision filed a motion for partial summary judgment. Envision asserted that it was entitled to recover the disputed fees under the contract and argued that it was entitled to summary judgment on Medina's counterclaims. Envision maintained that it did not breach the contract. It argued that the contract did not require it to operate the Blue Bag Program, that it was not required under the contract to make the sought after repairs/replacements, and that it was not required under the contract to "deep clean" the CPF. Envision maintained that Medina had not notified Envision of any of these issues during the contract and that Medina failed to utilize the dispute resolution provision in the contract. Accordingly, Envision also believed that Medina was barred from recovering the damages it

sought in its counterclaims. Medina opposed the motion and Envision filed a reply brief in support of its arguments.

{¶7} Medina also filed a motion for summary judgment on its counterclaims and Envision's complaint. It maintained that Medina was not required to pay the fees Envision sought and that Envision breached the contract by failing to continue the Blue Bag Program for the duration of the contract and by failing to maintain the CPF. With respect to the latter point, Medina asserted that Envision failed to comply with certain contract provisions by failing to repair "damaged items such as doors, insulation, the tip floor" and failing to "eradicate combustible dust[.]" It does not appear that Medina sought summary judgment on its counterclaims as to the amount of damages, as it requested a trial solely to determine that issue. Envision opposed the motion and Medina filed a reply brief in support of it. The parties submitted a stipulated exhibit which they agreed was "a true and correct copy of the Contract to Operate the Medina County Central Processing Facility and Compost Facilities" which the parties agreed could "be used for all purposes * * * including with respect to any dispositive motions or at any trial." That document consists of over 300 pages and includes, inter alia, the contract documents mentioned above, as well as the bid questions and answers.

{¶8} Following briefing, the trial court entered judgment. The trial court concluded that the provision in the contract concerning fees was unambiguous and that Envision had a duty to pay the local fees. With respect to the counterclaims, the trial court determined that nothing in the contract required Envision to perform the services that Medina asserted were required under the contract.

{¶9} Both Envision and Medina appealed the trial court's judgment and those appeals were subsequently consolidated. Envision and Medina each raise a single assignment of error for our review.

II.

**ENVISION'S ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN DENYING ENVISION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS PASS THROUGH COST CLAIM AND IN GRANTING MEDINA'S MOTION FOR SUMMARY JUDGMENT THEREON.

{¶10} It its sole assignment of error, Envision asserts that the trial court erred in denying its motion for summary judgment and in granting Medina's motion on Envision's breach of contract claim. Envision specifically argues that the trial court incorrectly interpreted the contract provision relating to pass-through costs against it. In the alternative, Envision argues at best the contract provision is ambiguous. As we agree that the contract provision is ambiguous, we reverse and remand.

{¶11} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe–Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶12} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶13} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id*. Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶14} "'Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach.'" *Bender Dev. Co., Inc. v. Streza,* 9th Dist. Lorain No. 03CA008397, 2004-Ohio-4576, ¶ 10, quoting *Garofalo v. Chicago Title Ins. Co.,* 104 Ohio App.3d 95, 108 (8th Dist.1995).

{¶15} "'The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal.'" *Town & Country Co-Op, Inc. v. Sabol Farms, Inc.,* 9th Dist. Wayne No. 11CA0014, 2012-Ohio-4874, ¶ 15, quoting *Watkins v. Williams,* 9th Dist. Summit No. 22162, 2004-Ohio-7171, ¶ 23. "It is a well-known and established principle of contract interpretation that '[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.'" *Lutz v. Chesapeake Appalachia, L.L.C.,* Slip Opinion No. 2016-Ohio-

7549, ¶ 9, quoting *Skivolocki v. E. Ohio Gas Co.,* 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. In carrying out that mandate, the contract is to be examined as a whole. *Skidmore v. Natl. Bronze & Metals (Ohio) Inc.,* 9th Dist. Lorain No. 12CA010328, 2014-Ohio-4423, ¶ 28, quoting *Sunoco, Inc. (R & M) v. Toledo Edison Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. "'[W]e will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.'" *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, ¶ 9, quoting *Sunoco, Inc*, 2011-Ohio-2720, at ¶ 37. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. Technical terms will be given their technical meaning, unless a different intention is clearly expressed." (Internal citations omitted.) *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361 (1997). "Only if the terms of a contract may reasonably be understood in more than one sense can they be construed as ambiguous." *Town & Country Co-Op, Inc.* at ¶ 15. "It is a primary rule of contract construction and interpretation that when confronted with an ambiguous contract, a court must first examine parole evidence to determine the parties' intent." *Michael A. Gerard, Inc. v. Haffke,* 8th Dist. Cuyahoga No. 98488, 2013-Ohio-168, ¶ 14. Only if doing so fails to clarify the meaning of the contract may the trial court proceed to examine secondary rules of construction, including the rule that ambiguities are construed against the drafter. *See id.* "Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper." *Skidmore* at ¶ 28, quoting *Town & Country Co-op, Inc.* at ¶ 15. "Extrinsic evidence

is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Lutz* at ¶ 9, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313-314, (1996). "This is particularly true 'when circumstances surrounding an agreement invest the language of the contract with a special meaning, [because] extrinsic evidence can be considered in an effort to give effect to the parties' intention.'" *Lutz* at ¶ 9, quoting *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.,* 129 Ohio St.3d 458, 2011-Ohio-4189, ¶ 29. "Extrinsic evidence can include '(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement.'" *Lutz* at ¶ 9, quoting *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.,* 129 Ohio App.3d 45, 56 (2d Dist.1998).

**{¶16}** In the trial court, Envision asserted that, pursuant to a provision in the contract detailing pass-through costs, Medina was required to reimburse Envision for local fees imposed upon Envision when it disposed of Medina County waste at local landfills. Envision asserted that the fees it sought reimbursement for were those fees paid at the landfill imposed by local government entities and solid waste districts. The provision at issue provides:

FEES

All Federal, State and *Local fees associated with the operation of the facilities shall be considered as pass-through costs. All such costs shall be paid by the County* with the exception of State OEPA fees for Class I Compost and associated Class I Compost wastes.

(Emphasis added.)

**{¶17}** As part of its summary judgment materials, Envision presented two affidavits of Steven Viny, the CEO of Envision. Mr. Viny averred that, at the landfill, local government fees

were collected when disposing of solid waste. Additionally, he stated that "a landfill owner is also authorized to charge a cost for the disposal at the owner's landfill. That landfill's charge is generally known as a gate charge, and it is generally assessed on a cost-per-ton basis." Envision argued that it was trying to recover the local fees collected at the landfill imposed by the local governments and solid waste districts and that those fees were "associated with the operation of the facilities[.]" Thus, those fees should be considered pass-through costs as outlined in the contract.

{¶18} Approximately a month into the contract, Envision billed Medina, via a letter to Mr. Troike, for the local fees Envision had paid at the landfill. Mr. Troike refused to pay those fees asserting they were not Medina's responsibility under the contract. The parties thereafter utilized the dispute resolution process outlined in the contract. Ultimately, the District Solid Waste Committee affirmed Mr. Troike's decision. While Envision disagreed with the determination, it stopped billing Medina for the fees but maintained that it was nonetheless entitled to recover them. At the conclusion of the contract, Envision sent Medina an invoice for $1,020,046.21, the total amount of local fees Envision paid over the contract period. A copy of the invoice was attached to the motion for summary judgment.

{¶19} Medina maintained that pursuant to other provisions of the contract, Envision was responsible for the fees. Additionally, Medina argued in its reply brief in the trial court that, under the provision concerning pass-through costs, it was only responsible for fees "incurred from the operation of the [CPF]" and the fees being sought by Envision were incurred from the disposal of end-waste, not the operation of the CPF. Medina pointed to the following portion

concerning End-Waste Residue Discharge Management and an answer to a question pertaining

to the Blue Bag Program as being dispositive of the issue.[1]

{¶20} The provision on End-Waste Residue Discharge Management states:

[Envision] shall be responsible for the disposal of all end-waste and residue from the recycling/sorting process.  [Envision] shall take adequate measures to remove all end-waste and residue from the CPF (building only) by the end of each operating day, unless the District approves otherwise.  [Envision] shall be responsible for determining where end waste will be disposed of.  However, [Envision] shall notify and receive approval form the District for the facilities that will be used for final disposal prior to the delivery of any Medina County end waste.  Any landfills to be used by [Envision] shall be permitted and licensed for operation by the State and Solid Waste District in which they operate. *The cost of transportation and payment of all disposal costs of the end-waste, residue, or recyclable material are the responsibility of [Envision].*

(Emphasis added.)

{¶21} "End-Waste" is a defined term in the contract; it is "[t]he resultant, non-recoverable refuse material which has been processed both manually and mechanically through the CPF, or a material that is not processed due to its characteristics or constituents."  "Central Processing Facility or CPF" is defined as "a facility which provides a tipping floor for incoming commingled recyclable material and refuse, a set of processing lines which utilize both manual and mechanical separation of recyclable material, storage areas for diverted recyclable material, and an area for end-waste transfer operations."

{¶22} The answer relied upon by Medina states:

[Envision] pays for all waste landfilled or otherwise disposed of by him. *The disposal costs (landfill gate charges for disposal and transportation) are costs paid by [Envision].*  Waste landfilled has a current State Fee of $4.75/ton in Ohio. That State Fee for Medina County generated waste is paid by the County. However, waste landfilled from blue bags by [Envision] (estimated to be

---

[1] While it could be argued that, because the answer was given in response to a question about the Blue Bag Program, the answer should only apply in the context of the Blue Bag Program, both sides appear to be in agreement that the answer is relevant for generally defining "disposal costs[.]"

approximately 45% by weight) also has a State Fee of $4.75/ton and those fees must be paid by [Envision].

(Emphasis added.)

{¶23} Medina maintained that the contract thus defined "disposal costs" as "landfill gate charges for disposal and transportation" and asserted that the fees being sought by Envision were disposal costs, as they were landfill gate charges, i.e. costs paid at the gate of the landfill. Thus, under the provision pertaining to End-Waste Residue Discharge Management, the fees were the responsibility of Envision. The phrase "landfill gate charges" is not a defined term in the contract. Envision argued that the fees and landfill gate charges were separate items. As noted above, Envision pointed to the affidavits of Mr. Viny, which defined gate charges as charges by the landfill owner paid by Envision in order to use the landfill. Envision argued that the fees for which it was seeking reimbursement, were not landfill gate charges, but were fees collected at the landfill and paid to municipalities.

{¶24} Thus, the parties disputed whether the fees were local fees "associated with the operation of the facilities" that were the responsibility of Medina or whether they were disposal costs that Envision was required to pay. Because the language of the contract is ambiguous, we conclude that the trial court erred in determining otherwise.

{¶25} Medina argues for a more limiting interpretation of "associated with the operation of the facilities[.]" It maintains that the plain language of the contract requires that the fees be incurred from the actual operation of the CPF and that Envision incurred the fees not from operating the CPF, but from disposing of end-waste at the landfill. Envision argues that "associated with" the operation of the facilities means that the fees need only be incurred due to some activity connected to the operation of the CPF and that disposing of the end waste is a

necessary part of operating the CPF; if the end waste was not removed and disposed of, then there would be no room to continue to process additional waste at the CPF.

**{¶26}** The dictionary defines "associate" as "closely connected (as in function or office) with another[.]" *Merriam-Webster's Collegiate Dictionary*, 75 (11th Ed.2005). Thus, the question is whether the fees are "closely connected" to the operation of the facilities. *Id.* We conclude the phrase is ambiguous as it is reasonably subject to more than one interpretation. For instance, it is unclear how "closely connected" the fees have to be to the operation of the facilities. Medina advocates for a direct connection to the actual operation of the facilities themselves, while Envision argues that the language requires a broader construction, which would include fees for activities that support or allow for the operation of the facilities.

**{¶27}** The parties' arguments about the payment of these costs involved both the provision on fees and the provision on end-waste residue discharge management as discussed above. However, in concluding that the provision on fees was unambiguous, it appears that the trial court did not consider the provision on end-waste residue discharge management in resolving this claim. As we determine the provision on fees is ambiguous, and a contract must be interpreted as whole, *see Skidmore*, 2014-Ohio-4423, at ¶ 28, we conclude that the trial court must consider in the first instance not only whether the facts in the record prevent or support summary judgment in light of the ambiguity in the fees provision, but also how the parties' arguments related to the end-waste residue management provision affect the resolution of the claim. This Court declines to decide these issues in the first instance. *See Price v. Carter Lumber Co.,* 9th Dist. Summit No. 26243, 2012-Ohio-6109, ¶ 22 ("As this Court remains a reviewing court, we will not consider the issues relevant to the motion for summary judgment in the first instance."). We are compelled to reverse and remand the matter to the trial court to

consider these issues in the first instance. *See id.; see also Collins v. Hearty Invest. Trust,* 9th Dist. Summit No. 27173, 2015-Ohio-400, ¶ 23-24.

## MEDINA'S ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF ON DEFENDANTS' COUNTERCLAIMS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WHEN THE CONTRACT BETWEEN DEFENDANTS AND PLAINTIFF CLEARLY PROVIDED THAT PLAINTIFF IS RESPONSIBLE FOR THE DAMAGES IN DEFENDANTS' COUNTERCLAIMS.

{¶28} In Medina's sole assignment of error, it asserts that the trial court erred in granting summary judgment to Envision on Medina's counterclaims and in denying Medina's corresponding motion. We agree in part.

{¶29} We incorporate the standard of review and discussion of law from the previous assignment of error. Medina and Envision both sought summary judgment on Medina's counterclaims. The first counterclaim alleged that Envision breached the contract by failing to operate the Blue Bag Program for the duration of the contract. The second counterclaim alleged that the contract obligated Envision to repair or replace damaged equipment and that Envision failed to repair or replace certain items. Additionally, the second counterclaim asserted that Envision failed to maintain the facilities in a reasonably clean state causing Medina to incur expenses in cleaning combustible dust. We will address each counterclaim in turn.

Blue Bag Program

{¶30} The Blue Bag Program referred to provisions in the contract that related to processing recyclable material imported from outside of Medina County. Blue bags themselves refer to recyclable materials that were placed into blue bags by residents and, thus, remained separate from other solid waste. Under the contract, Medina and Envision would share the revenue from processing those materials. The record evidences that immediately prior to the

contract at issue, Envision operated the CPF and its operation included the importation of blue bag recyclables.

{¶31} With respect to the counterclaim concerning the Blue Bag Program, Medina argued that Envision breached the contract by failing to continue the program, without cause, for the duration of the contract. It argued, without pointing to any evidentiary materials, that the CPF had the capacity to process the blue bag materials, and thus, Envision's termination of the program was without cause. Medina believed that the only way that Envision could terminate the program without committing a breach was if the capacity of Medina County waste was so great as to leave Envision unable to process both supplies.

{¶32} Envision asserted that there was no requirement that it operate the program for the duration of the contract. It additionally argued that it did not breach any requirement within the contract. It pointed to evidence that indicated that at the end of 2010, it no longer had a supplier of blue bags and that is why it stopped processing them at the CPF. Envision further argued that, when it presented Medina with another opportunity to process blue bags, Medina refused to let Envision do so over concerns that Envision would be unable to process Medina County's waste.

{¶33} Medina pointed to the following contract provision that formed part of Envision's bid:

> [Envision] imports blue bag recyclables from areas outside Medina County for processing at the CPF. Medina County waste is given processing priority over the imported Blue Bag material. [Envision] will continue to import Blue Bag recyclables as it has in the past creating increased revenue to Medina County. Last year [Envision] imported approximately 7000 tons of blue bag material. Blue Bag importation may be increased or decreased by [Envision] based on Medina County waste volumes and the subsequent processing availability given that Medina County waste has processing priority. The blue bag program is already in place and therefore will proceed immediately upon commencement of the contract.

**{¶34}** Medina additionally noted that the bid sheet indicated that, with respect to the revenue sharing of all recyclables, which included blue bag recyclables, Envision was to indicate a percentage of total revenue it would share and a minimum amount that it would pay Medina annually. However, Envision pointed to evidence that it paid at least the minimum annual payment required under the contract to Medina for recyclables; a payment which included blue bag recyclables.

**{¶35}** Envision pointed to the following contract provision:

The current operations contractor has agreements in place to take, sort and recycle mixed and/or single stream recyclable materials from municipalities outside of Medina County at the CPF. The current Contractor has made provisions with Medina County to compensate the County for use of their facilities to sort the mixed or "Blue Bag" materials. The county will accept proposals from the successful Contractor to utilize the CPF for such revenue enhancing proposals providing that all Medina County generated waste is processed first, prior to blue bags and the goals and objectives of these specifications and the District Plan are met. Note, that the County has studied the existing Blue Bag Program and found that an average of 45% of the material contained in the bags is not recyclable and must be landfilled. The contractor will be required to pay for the disposal of this material as well as the associated State of Ohio Solid Waste Disposal Fees. The volume of "Blue Bags" processed in 2008 totaled approximately 7,000 tons. The cost per ton to be charged to the Contractor for the utilization of the CPF to process the Blue Bags shall be $8.00/ton.

**{¶36}** The trial court, in its decision, noted that Medina was specifically asked in a pre-bid question, "If no blue-bags are delivered, will the Contractor incur any liability?"[2] Medina responded to that question by directing the bidders to above quoted paragraph, which does not include any language indicating the contractor would be liable if no blue bags were delivered to the CPF. Envision also argued that the fact that the provision above indicated that Medina

---

[2] The entirety of the question reads: "Page BF-4 (3) states the County will use 7,000 tons per year of outside County blue-bags brought to CPF. Question: Is the 7,000 tons of estimated volume of blue-bag recyclables brought in from outside the county only used in the analysis of the submitted [Request for Bids]? If no blue-bags are delivered, will the Contractor incur any liability?"

County would "accept proposals" indicated that contractors were not required to operate the program. Additionally, Envision argued that, while it was required to compensate Medina for blue bags processed, there was no requirement to process blue bags. In so doing, it referenced the following clause: "Contractor shall pay the County at the end of each month for Blue Bags processed through the CPF. No out-of-county wastes or recyclables will be processed or transferred in or out of the CPF by Contractor without compensation to Owners in accordance with this Contract."

{¶37} The trial court concluded that nothing in the contract required Envision to continue the Blue Bag Program when it had no source from which to obtain the blue bags. We cannot conclude that the trial court erred in granting Envision summary judgment on this counterclaim. Envision presented evidence that it ceased operating the Blue Bag Program in late 2010 when the companies that sent Envision the blue bags stopped doing so. Further, Envision presented evidence that when it presented Medina with another opportunity to process blue bags, Medina refused to let Envision do so over concerns that Envision would be unable to process Medina County's waste. Finally, Envision submitted evidence that it paid the minimum amounts required under the contract for recyclables, which included blue bags.

{¶38} Considering the totality of the contract documents, and the evidence submitted on summary judgment, we can only conclude that Medina has not demonstrated that Envision was liable for failing to continue to process blue bags at the CPF. In answering the pre-bid question, which specifically asked if the contractor would incur liability if no blue bags were delivered, Medina had the opportunity to impose liability under the circumstances before us. Medina did not do so. Medina did not demonstrate it was entitled to summary judgment and Envision met its

burden demonstrating the absence of a genuine issue of material fact. The trial court did not err in awarding Envision summary judgment on Medina's counterclaim.

{¶39} This portion of Medina's assignment of error is overruled.

Cleanliness, Maintenance, and Repairs

{¶40} Medina asserted in its second counterclaim that Envision failed to comply with certain maintenance, cleanliness, and repair provisions in the contract. Specifically, Medina argued in its motion for summary judgment that Envision "failed to maintain the CPF including failing or otherwise refusing to repair damaged items such as doors, insulation, the tip floor, and eradicate combustible dust[.]"

{¶41} In addressing this counterclaim, the trial court only discussed the issue of cleanliness and failed to cite or discuss the provision in the contract related to repairs and replacements of damaged equipment and mechanical systems.[3] While eradicating dust could be viewed as an item related to cleaning, the other items mentioned in Medina's motion appear to be related to repair and maintenance. Further, given the wording chosen by Medina in its motion, it could be argued that Medina considered eradicating the dust to be a repair. As it appears the trial court failed to consider this counterclaim in light of all of the contract language relied upon by the parties, we conclude, particularly in light of the remand on the other issues, that it is appropriate for the trial court to consider the matter in the first instance. *See Price*, 2012-Ohio-6109, at ¶ 22.

---

[3] That provision provides in relevant part, "[Envision] shall be responsible for maintaining the Central Processing Facility and Compost Facilities, including all equipment and mechanical systems. This shall include repairs or replacement when repairs do not return damaged items to their original appearance and service condition. The County shall maintain the Drop-Off Area."

**{¶42}** We overrule the portion of Medina's assignment of error concerning the counterclaim related to the Blue Bag Program, sustain the portion of Medina's assignment of error concerning the remaining counterclaim to the extent discussed above, and remand the matter for proceedings consistent with this opinion.

## III.

**{¶43}** Both Envision's and Medina's assignment of error are sustained to the extent discussed above. The portion of Medina's assignment of error addressing the counterclaim related to the Blue Bag Program is overruled. The judgment of the Medina County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

MOORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

STEPHEN M. O'BRYAN, DAVID H. WALLACE, and MICHAEL J. ZBIEGIEN, JR., Attorneys at Law, for Appellant/Cross-Appellee.

S. FORREST THOMPSON, Prosecuting Attorney, and TOM J. KARRIS and BRIAN M. RICHTER, Assistant Prosecuting Attorneys, for Appellees/Cross-Appellants.