[Cite as *Dalton v. Massillon*, 2020-Ohio-1174.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

VILLAGE OF DALTON, OHIO

    Appellee/Cross-Appellee

    v.

CITY OF MASSILLON, OHIO

    Appellant/Cross-Appellee

    and

TED S. AND PENNY S. RENNER

    Appellees/Cross-Appellants

C.A. No.    19AP0027

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2015 CVC-H 000428

DECISION AND JOURNAL ENTRY

Dated: March 30, 2020

CARR, Judge.

{¶1}    Appellant the City of Massillon ("Massillon") and Cross-Appellants Ted S. Renner, Trustee of the Ted S. Renner Trust and Penny S. Renner, Trustee of the Penny S. Renner Trust (collectively "the Renners") appeal the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2}    This Court previously described the background of this litigation in the prior appeal:

This matter arises from a dispute between [] Massillon and the Village of Dalton [("Dalton")] as to which party bears responsibility to replace a bridge located on

property that is the subject of a lease between Dalton and Massillon entered on October 19, 1998 (the "Lease"). The bridge provides crossing over an abandoned railroad right-of-way to connect the northern and southern segments of the property presently owned by [the Renners]. The Renners have made demand upon Dalton to repair the bridge. Dalton alleges that the bridge cannot be repaired but must be replaced. Dalton brought this declaratory judgment seeking a determination as to its obligation regarding the replacement of the bridge.

## History of the Property

On December 2, 1882, an instrument (the "1882 Deed") recorded in Wayne County conveyed an interest in land from Thomas Reed to the Wheeling and Lake Erie Railroad Company. The 1882 Deed permitted the railroad company to locate a rail line across Mr. Reed's property, provided that the railroad company "put up one crossing" for Mr. Reed to pass and "keep up the crossing[.]" The Renners are the present owners of this property formerly owned by Mr. Reed.

The railroad company eventually abandoned the railroad spur and transferred its interest in that property to Massillon by a quitclaim deed dated June 6, 1996 (the "1996 Deed"). By virtue of the 1996 Deed, Massillon assumed responsibility for "restoration, repair, reconstruction and/or rehabilitation of any and all bridges * * *" on the property.

In October of 1998, Dalton leased the property from Massillon for a period of 99 years commencing on October 1, 1998, and ending on September 30, 2098, for rent in the amount of $1.00. [Dalton drafted the Lease.] The Lease states in parts relevant to this action:

3. Use of Real Estate The real estate shall be used as a hiking and biking trail and shall be made a part of [Dalton]'s village park and recreational area. Any and all improvements will be made by [Dalton] at no expense to [Massillon.] The operation of the park will be conducted as part of [Dalton]'s Park and Recreational Department.

4. Maintenance [Dalton] shall accept the real estate in its present condition. [Dalton] agrees at its expense to properly maintain the area in a clean, safe and healthy condition.

5. Indemnification of [Massillon.] [Dalton] agrees to save [Massillon] harmless from any and all claims of any kind, resulting from injury to any person or persons, or to property and agrees to promptly defend any actions which may be brought as a result of such injury or damage at [Dalton]'s cost and expense. In the event [Massillon] is made party to any such action, upon written notice to [Dalton], [Dalton] agrees to take over the defense of and pay or liquidate any judgment resulting from any such action in which [Massillon] is named a party thereto. [Dalton] shall name [Massillon] as an additional insured on [Dalton]'s liability insurance policy.

In light of the Renner's demand for repair of the bridge, the issues in this matter involve the construction of the Lease, as well as the 1882 and 1996 Deeds, to determine which party or parties bear responsibility for the repair or, potentially, replacement of the bridge.

**Procedural History**

Dalton initiated this action for declaratory judgment against Massillon, and nam[ed] the Renners as interested parties. The complaint alleges that the bridge is in need of replacement, that the Renners have made a demand upon Dalton to replace the bridge, and that Dalton is in doubt as to its construction obligations regarding the bridge.

On July 1, 2016, Massillon moved the court for summary judgment in its favor, requesting that the trial court declare that, under the terms of the Lease, Dalton accepted the property in its present condition, assumed the obligation to maintain the property and pay for improvements, and is now obligated to replace the bridge "to the extent required as a consequence of the failure of maintenance during the term of Dalton's possession." In the motion, Massillon also requested a declaration that Dalton indemnify Massillon for the "alleged claim of [the] Renners relating to the damage to the bridge in need of replacement."

The Renners filed a response and also moved for summary judgment, arguing for a declaration that Massillon and Dalton are obligated to maintain, repair, reconstruct, and replace the bridge. Dalton responded to oppose Massillon's summary judgment motion and also moved for summary judgment in favor of Dalton on July 21, 2016.

The trial court issued a decision on October 14, 2016, ruling on the motions for summary judgment and determining that, in the absence of disputes of material fact, Dalton is entitled to summary judgment on its request for declaratory relief. The entry instructed Dalton to prepare and submit a proposed final judgment entry including findings of fact and conclusions of law and declaring with specificity the rights and obligations of the parties. Thereafter, on February 3, 2017, the trial court entered judgment, including findings of fact and conclusions of law, in favor of Dalton and against Massillon, declaring that Massillon bears responsibility for replacing the bridge.

*Dalton v. Massillon*, 9th Dist. Wayne No. 17AP0010, 2018-Ohio-2104, ¶ 2-9.

{¶3} Both Massillon and the Renners appealed the trial court's judgment. *Id.* at ¶ 10. Ultimately, this Court concluded it lacked jurisdiction to consider the merits of the appeal. *Id.* at ¶ 19. In so doing, we pointed out that it was "problematic that the record [wa]s not clear on a significant issue of fact concerning whether the bridge actually and presently needs to be replaced."

*Id.* at ¶ 13. However, this Court dismissed the appeal because "the trial court failed to make a determination declaring the extent to which any obligations owed to the Renners are allocated between Dalton and Massillon per the Lease." *Id.* at ¶ 17.

{¶4} Upon remand, the parties entered into joint stipulations. The stipulations included that, "[t]he parties agree that due to the current condition of the subject bridge, it needs to be replaced[,]" and that "Dalton will amend its complaint to eliminate any claim as to the issue of responsibility for repair or maintenance of the bridge, limiting the scope of the complaint to the issue of replacement of the bridge only." The document concluded with a stipulation providing that, "[a]s a result of these stipulations, a determination has now been made as to the extent of the parties' respective rights and obligations as requested in plaintiff's complaint."

{¶5} Thereafter, a "Stipulated Amendment to Complaint" was filed. It stated that: "It is hereby stipulated and agreed by the attorneys for the respective parties, pursuant to Rule 15(A) of the Ohio Rules of Civil Procedure, that the Complaint herein by and is hereby amended to limit the scope of the declaratory judgment to the issue of which of the parties to the litigation bears responsibility for the replacement of the bridge which is the subject of this action."

{¶6} On April 5, 2019, the trial court entered a judgment entry stating that, "[b]ased on the motions for summary judgment filed previously herein by Dalton and Massillon, the Court grants Dalton's motion for declaratory judgment, as set forth in the conclusions of law attached hereto * * * and incorporated herein." No conclusions of law accompanied the entry. Massillon and the Renners again appealed. After this Court questioned the absence of any accompanying conclusions of law, Massillon requested a limited remand pursuant to Civ.R. 60(A) to correct the record. The request was granted and the trial court issued an entry which was accompanied by

findings of fact and conclusions of law. Those findings of fact and conclusions of law mirror the findings of fact and conclusions of law issued on February 3, 2017.

{¶7} Both Massillon and the Renners have each raised a single assignment of error for our review. As both assignments of error raise essentially the same issue, they will be addressed together.

II.

### MASSILLON'S ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DECLARATORY JUDGMENT IN FAVOR OF DALTON, FAILING TO FIND THAT THE LONG-TERM LEASE BETWEEN DALTON AND MASSILLON SHIFTED THE RESPONSIBILITY OF MAINTENANCE AND IMPROVEMENT – INCLUDING REPLACEMENT – AND INDEMNITY ONTO DALTON AS THE LESSEE.

### THE RENNERS' ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DECLARATORY JUDGMENT HOLDING THE VILLAGE OF DALTON (LESSEE) WAS NOT RESPONSIBLE TO REPLACE A BRIDGE ON RENNERS' REAL PROPERTY UNDER A LONG-TERM LEASE WITH THE CITY OF MASSILLON.

{¶8} Massillon argues in its sole assignment of error that the trial court erred in concluding that Massillon is responsible for replacing the bridge because the Lease obligates Dalton to replace the bridge and indemnify Massillon for any claims. Massillon does not appear to argue that the trial court's understanding of the obligations under the two deeds was incorrect. *See* App.R. 16(A)(7). Instead, in a conclusory fashion, without any citations to legal authority, Massillon asserts that it was unnecessary and improper for the trial court to consider any document outside the Lease, despite the fact that the complaint originally specifically requested that the trial court determine the obligations under the two deeds and the Lease. *See id.* Given Massillon's

limited argument on appeal, this Court will not undertake an independent review of the propriety of the trial court's findings and conclusions with respect to the two deeds.

{¶9} While agreeing with the trial court that Massillon was obligated under the 1996 Deed to replace the bridge, the Renners, in their assignment of error, assert that Dalton was additionally liable to replace the bridge pursuant to the Lease.

{¶10} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶11} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id.* at 293. Rather, the non-moving party has a reciprocal burden of responding by

setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶13} "A lease is a contract to be interpreted like any other contract." *Wal-Mart Realty Co. v. Tri-County Commons Assocs., LLC*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, ¶ 9. "The interpretation of [a] written contract[], and the inherent assessment as to whether it contains any ambiguities, is a question of law which this Court reviews de novo." *Presper v. Hurst*, 9th Dist. Summit No. 29307, 2020-Ohio-256, ¶ 18. "When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. "In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* "Only if the terms of a contract may reasonably be understood in more than one sense can they be construed as ambiguous." *Envision Waste Servs., LLC v. Cty. of Medina*, 9th Dist. Medina Nos. 15CA0104-M, 15CA0106-M, 2017-Ohio-351, ¶ 15, quoting *Town & Country Co-Op, Inc., v. Sabol Farms, Inc.*, 9th Dist. Wayne No. 11CA0014, 2012-Ohio-4874, ¶ 15. "It is a primary rule of contract construction and interpretation that when confronted with an ambiguous contract, a court must first examine parole evidence to determine the parties' intent. Only if doing so fails to clarify the meaning of the contract may the trial court proceed to examine secondary rules of construction, including the rule that ambiguities are construed against the drafter." (Internal quotations and citations omitted.) *Envision Waster Servs., LLC* at ¶ 15.

**{¶14}** The Lease at issue is extremely succinct and is comprised of only two pages including signatures. In fact, the accompanying description of the property is longer than the provisions of the Lease itself. The numbered provisions of the Lease provide in their entirety:

1. Rental Amount. The rental amount shall be One and 00/100 Dollars ($1.00).

2. Term. [Massillon] hereby leases to [Dalton] the real estate described in the attached "Exhibit A" for a period of ninety-nine (99) years commencing October 1, 1998, and ending September 30, 2098.

3. Use of Real Estate. The real estate shall be used as a hiking and biking trail and shall be a part of [Dalton's] village park and recreational area. Any and all improvements will be made by [Dalton] at no expense to [Massillon]. The operation of the park will be conducted as part of [Dalton's] Park and Recreational Department.*

4. Maintenance. [Dalton] shall accept the real estate in its present condition. [Dalton] agrees at its expense to properly maintain the area in a clean, safe and healthy condition.

5. Indemnification of [Massillon]. [Dalton] agrees to save [Massillon] harmless from any and all claims of any kind, resulting from injury to any person or persons, or to property and agrees to promptly defend any actions which may be brought as a result of such injury or damage at [Dalton's] cost and expense. In the event [Massillon] is made a party to any such action, upon written notice to [Dalton], [Dalton] agrees to take over the defense of and pay or liquidate any judgment resulting from any such action in which [Massillon] is name a party thereto. [Dalton] shall name [Massillon] as an additional insure on [Dalton's] liability insurance policy.

6. Quiet Enjoyment. [Massillon] agrees that if [Dalton] shall perform all agreement to be performed on [Dalton's] part, [Dalton] shall at all times during the term of this lease have the peaceful and quiet enjoyment and possession of said premises without hinderance from [Massillon] or any person or person lawfully claiming said premises. [Sic.]

6a. Assignment. T[h]is Lease Agreement shall not be assigned or sublet by [Dalton].

7. Persons Bound. This agreement is binding on [Massillon] and [Dalton], and their respective successors and assigns.

*In the event that said real estate is not used as a hiking and biking trail then the City of Massillon shall have the option to terminate this lease, by providing written notice to the Village of Dalton of said termination.

{¶15} Before turning to Massillon's and the Renners' arguments, it is important to note that the Lease does not mention the bridge, does not use the words repair or replace, and does not mention the deeds, which the trial court determined require Massillon to replace the bridge. Instead, the focus of the Lease is on the use of the property as a hiking and biking trail. An affidavit of the solicitor of Dalton, which was not controverted, states that "[t]he bridge is not used in connection with the hiking and bike trial, but solely in connection with the use of the lane providing access to the property of the Renners." Thus, taking the lease as a whole, there does not appear to be an obvious intention to hold Dalton responsible for replacing the bridge. *See Sunoco, Inc. (R&M)*, 129 Ohio St.3d 397, 2011-Ohio-2720, at ¶ 37.

{¶16} Massillon argues that provisions three, four, and five require Dalton to be responsible for the replacement of the bridge, whereas the Renners appear to only rely on provisions three and four. As to provision three, they focus on the sentence that states, "Any and all improvements will be made by [Dalton] at no expense to [Massillon]." With respect to provision four, Massillon and the Renners point to the sentence that reads, "[Dalton] agrees at its expense to properly maintain the area in a clean, safe and healthy condition." Finally, as to provision five, Massillon argues that the sentence, "[Dalton] agrees to save [Massillon] harmless from any and all claims of any kind, resulting from injury to any person or persons, or to property and agrees to promptly defend any actions which may be brought as a result of such injury or damage at [Dalton's] cost and expense[,]" requires Dalton to replace the bridge.

**Improvement**

{¶17} The parties agreed below, that the only issue before the trial court was which of the parties was responsible for replacing the bridge. Improvement has been defined as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to

more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." *Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 464 (1994), quoting *Black's Law Dictionary* 757 (6th Ed.1990). Given the foregoing definition, even if we were to conclude that the Lease obligated Dalton to make all improvements, we cannot say that replacement of the bridge is an improvement.

**Maintain**

{¶18} We also cannot conclude that a duty to "properly maintain the area in a clean, safe and healthy condition" requires Dalton to replace the bridge. The ordinary meaning of maintain is "[t]o care for (property) for purposes of operation productivity or appearance; to engage in general repair and upkeep." *Black's Law Dictionary* 973 (8th Ed.2004). Whereas replace means "to put something new in the place of[.]" *Merriam-Webster's Collegiate Dictionary* 1056 (11th Ed.2003).

{¶19} In support of its argument, Massillon points to cases in which courts have concluded that maintenance and repair provisions required the lessee to replace certain items. However, in those cases there was evidence that the lessee failed to maintain the property resulting in certain structures needing to be replaced. *See, e.g. Andrews v. Schmelzer*, 5th Dist. Fairfield No. 96 CA 67, 1997 WL 219163, *3 (Mar. 28, 1997) ("Had appellant fulfilled his contractual obligation of 'maintenance' to the bridge, the bridge would not have deteriorated to the point where it had to be replaced in order to comply with his contractual obligations."); *Brown v. Spitzer Chevrolet Co.*, 181 Ohio App.3d 642, 2009-Ohio-1196, ¶ 12 (5th Dist.). Here, there was no evidence presented that Dalton failed to maintain any property subject to the lease nor is there any evidence as to what caused the "poor condition" of the bridge. Further, there is no evidence in the record about the condition of the bridge when Massillon and Dalton entered into the lease. Thus,

Massillon's claim that Dalton's failure to maintain the bridge necessitated replacement is pure speculation; the mere fact that the bridge is now in need of replacement does not necessitate the conclusion that it is need of replacement because Dalton failed to maintain it.

**Indemnify**

{¶20} Finally, Massillon argues that the indemnification clause also supports the conclusion that Dalton is responsible for replacing the bridge. The sentence at issue states: "[Dalton] agrees to save [Massillon] harmless from any and all claims of any kind, resulting from injury to any person or persons, or to property and agrees to promptly defend any actions which may be brought as a result of such injury or damage at [Dalton's] cost and expense." While the clause is broad in the sense that it references "any and all claims of any kind," it is nonetheless limited by the phrases "resulting from injury to any person or persons, or to property * * *." Injury is commonly defined as "an act that damages or hurts[.]" *Merriam-Webster's Collegiate Dictionary* 644 (11th Ed.2003). Here, there was no evidence presented as to what caused the bridge to need to be replaced. Accordingly, we cannot say that Massillon has demonstrated that the claim at issue resulted from an act that damaged the bridge.

{¶21} Given the foregoing, we cannot say that Massillon or the Renners have demonstrated that the trial court erred in granting summary judgment to Dalton and in concluding that Massillon is responsible for the replacement of the bridge. The assignments of error are overruled.

III.

{¶22} The assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant and Cross-Appellants.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

GREGORY A. BECK, JAMES F. MATHEWS, and ANDREA K. ZIARKO, Attorneys at Law, for Appellant/Cross-Appellee.

ROBERT J. REYNOLDS, Attorney at Law, for Appellee/Cross-Appellee.

BRYAN K. BARNARD, Attorney at Law, for Appellees/Cross-Appellants.